[Civ. No. 38277. First Dist., Div. One. Mar. 21, 1977.]

NAISMITH DENTAL CORPORATION,
Plaintiff and Appellant, v.
BOARD OF DENTAL EXAMINERS,
Defendant and Respondent.

**COUNSEL**

Caldecott, Peck, Phillips & Stewart and Thomas N. Stewart for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Ralph M. Johnson, Deputy Attorney General, for Defendant and Respondent.

Miller & Mandel, Jesse D. Miller and Donald Disler as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—In an appeal from a judgment denying its petition for a writ of mandate, Naismith Dental Corporation (hereafter Nai-

smith) attacks the constitutionality of Business and Professions Code section 1658.1 on two grounds. It is contended that the statute operates to deny Naismith, and others similarly situated, "due process" and "equal protection."

Section 1658.1 provides: "On or after September 21, 1963, no dentist shall be granted permission for an additional place of practice, except that a dentist may be granted permission for more than one place of practice if he is in personal attendance at each place of practice at least 50 percent of the time during which such places of practice are open for the practice of dentistry."

The relevant facts of the case are portrayed by the uncontroverted findings of the superior court, as follows:

"Petitioner is a California professional dental corporation and holds a Certificate of Registration as such issued by Respondent Board of Dental Examiners. All of Petitioner's outstanding shares of stock are owned by Richard T. Naismith, D.D.S., holding license No. 8902 issued by Respondent in 1941.[1] [¶] . ... Petitioner presently owns and operates one office in San Francisco and one office in Oakland. Each has been in continuous operation since prior to September 1, 1963. [¶¶] . . . Petitioner employs 14 dentists in Oakland and 7 in San Francisco, together with approximately 40 ancillary personnel. Dr. Naismith does not personally treat patients; rather he spends his time in professional supervision of the treating dentists and overall administration of the organization. [¶¶] . . . On May 2, 1974, Petitioner made application to Respondent for permission to open a third office in Stockton, California. On August 23, 1974, Respondent denied Petitioner's application for the sole reason that Petitioner admitted that Dr. Naismith would not be present at this third facility at least 50% of the time that it was open for the practice of dentistry."

We have read and considered the record and the briefs of the respective parties and amicus curiae. Our conclusion is that the judgment must be affirmed; the reasons follow.

---

[1]Only natural persons are eligible for licensing as dentists. (See Bus. & Prof. Code, §§ 1627, 1628; Corp. Code, § 13401.) Since 1968 a corporation may practice dentistry through licensed persons (see Corp. Code, §§ 13400-13410), and it must be "registered" as a professional corporation (see Corp. Code, § 13404).

I. ▮ We first consider Naismith's contention that section 1658.1 violates the state and federal "due process" clauses in that it is arbitrary, and has no reasonable relationship to any legitimate state purpose.

▮ In determining whether legislation is violative of due process, courts "exercise an extraordinary power over a coordinate branch of government and perform a correspondingly narrow function: we simply determine whether the statute reasonably relates to a legitimate governmental purpose." (*Wilke & Holzheiser, Inc. v. Dept. of Alcoholic Bev. Control,* 65 Cal.2d 349, 359 [55 Cal.Rptr. 23, 420 P.2d 735].) "The doctrine . . .—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded." (*Ferguson v. Skrupa,* 372 U.S. 726, 730 [10 L.Ed.2d 93, 97, 83 S.Ct. 1028, 95 A.L.R.2d 1347].) ▮ Before a court may declare an act of the Legislature invalid because of due process or other constitutional conflict, "such conflict must be clear, positive, and unquestionable." (*Varanelli v. Structural Pest Control Board,* 1 Cal.App.3d 217, 220 [81 Cal.Rptr. 492].)

▮ And it appears to be the settled rule that "judicial examination of a statute under economic due process attack [as here] is completed when any fact or facts appear, or may be hypothesized, which the Legislature might rationally have accepted as the basis for a finding of public interest." (*Varanelli v. Structural Pest Control Board, supra,* 1 Cal.App.3d 217, 222; see also *Doyle v. Board of Barber Examiners,* 219 Cal.App.2d 504, 514 [33 Cal.Rptr. 349], and authority there collected.)

▮ We observe that the ultimate responsibility for the care and treatment of patients of a dental office rests upon its proprietorship, whether a professional corporation, partnership or an individual. Adverting to section 1658.1, it is logically permissible to infer a valid public purpose that the proprietary and licensed head of such an office maintain a reasonably close and direct supervision over its professional employees and operations. This purpose may be given effect by a requirement that such proprietary and licensed head be in personal attendance at the office "at least 50 percent of the time" during which it is "open for the practice of dentistry." The foregoing, in our opinion, "might rationally have [been] accepted [by the Legislature] as the basis for a finding of public interest," and thus section 1658.1 was not in contravention of the "due process" clauses. We make no determination, of course, whether or not there were other valid reasons apparent to the Legislature from its

expertise and study which it might likewise have accepted as bases for the statute.

We note also the provisions of title 16, section 1060, of the California Administrative Code: "The purpose of the rules of this article is to carry out the provisions of Article 3.5 [which includes Bus. & Prof. Code, § 1658.1] of the Dental Practice Act and to facilitate, encourage and protect the public health. It is intended to preserve a close personal relationship between the applicant dentist and his patients at any additional office by preventing a division between the business and professional sides of the said dental practice and by fostering a unity of ownership, management, and substantial direct proprietor supervision and control over the operative side of the practice." ▮ Although not binding on the courts, such a construction of a statute by the administrative agency charged with its enforcement is entitled to great weight. (*Coca-Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1].)

▮ We conclude that Naismith has not met the required burden of establishing the lack of any public purpose in the enactment of Business and Professions Code section 1658.1, and thus its denial of due process of law.

II. ▮ We turn now to Naismith's second contention—that section 1658.1 operates to deny it, and others similarly situated, equal protection of the laws.

We are aided by the state's high court's recent case of *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], and by Naismith's analysis of that and other authority, as follows:

▮ "There are two tests employed in reviewing legislative classifications under the equal protection clause. The 'standard' test is the so-called 'rational relationship' test. It is applied in the review of economic and social welfare legislation ['] . . . in which there is a "discrimination" or differentiation of treatment between classes or individuals. It manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and "requires merely that distinctions drawn by a challenged statute bear some *rational relationship* [emphasis

ours] to a conceivable legitimate state purpose."['] (*D'Amico* v. *Board of Medical Examiners* (1974) 11 C 3d 1, 16).

■ "A more stringent test [the "close scrutiny" standard] is applied where the criteria for classification is 'suspect' or where the classification touches on 'fundamental interests' (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 C 2d 566, 578-580; *Sail'er Inn* v. *Kirby* (1971) 5 C 3d 1, 16-20; *Raffaelli* v. *Committee of Bar Examiners* (1972) 7 C 3d 288, 291-294; *Brown* v. *Merlo* (1973) 8 C 3d 855, 861; *D'Amico* v. *Board of Medical Examiners* (1974) *supra*, 17). When *either* of these criteria are present the courts adopt an attitude of 'active and critical analysis, subjecting the classification to "*close scrutiny*" ' [this emphasis only is ours] (*D'Amico* v. *Board of Medical Examiners, supra*, 17). The burden is then placed upon the state to establish not only that it has a *compelling* interest which justifies the law, but that the classification itself is *necessary* to further its purposes (*D'Amico* v. *Board of Medical Examiners, supra*, 17)."

■ The trial court appears to have applied the "rational relationship" test. Naismith contends (1) that the "close scrutiny" test should have been applied but, (2) that even under the "rational relationship" test, the statute denies equal protection of the laws.

We are of the opinion that *D'Amico* v. *Board of Medical Examiners* has settled the question of which of its two criteria is applicable to the issue before us. ■ The court there held that a "cognizable 'fundamental interest' in the right to pursue employment . . . is clearly limited in scope to 'the common occupations of the community' and should not be applied to professions whose technical complexity and intimate relationship to the public interest and welfare counsel greater deference to the legislative judgment."[2] (11 Cal.3d, p. 18.) ■ Clearly, under this holding and rationale, the practice of dentistry neither touches upon a "fundamental interest," nor is its legislative classification "suspect."

Accordingly, the trial court properly declined to apply the "close scrutiny" standard.

■ We therefore address ourselves to *D'Amico* v. *Board of Medical Examiners'* alternative test, whether the " 'distinctions drawn by a challenged statute bear some rational relationship to a conceivable

---

[2]We find nothing in the context of, or elsewhere in, *D'Amico* v. *Board of Medical Examiners* which qualifies this language, as is suggested by Naismith.

legitimate state purpose.' " (11 Cal.3d, p. 16.) We find this test to differ in no substantial respect from the above-discussed requirement (see *Varanelli* v. *Structural Pest Control Board, supra,* 1 Cal.App.3d 217, 222) for statutory due process sufficiency, i.e., "when any fact or facts appear, or may be hypothesized, which the Legislature might rationally have accepted as the basis" for the statute. As we have pointed out above, section 1658.1 is in conformity with that requirement. It therefore follows that the statute meets the "rational relationship" criterion of *D'Amico* v. *Board of Medical Examiners.*

A related contention of Naismith is that no statute similar to Business and Professions Code section 1658.1 applies to the practice of medicine. It argues: "A legislative distinction between dentists and physicians *related* to their respective qualifications or functions would be rational. A distinction between them not related to those inherent differences could be valid under equal protection only if the distinction in treatment could be shown to be related to some other demonstrable difference between them."

The contention is squarely answered by *Semler* v. *Dental Examiners,* 294 U.S. 608, 610 [79 L.Ed. 1086, 1089, 55 S.Ct. 570], where the court found that Semler, also a dentist, had no "ground for objection because the particular regulation is limited to dentists and is not extended to other professional classes. The State was not bound to deal alike with all these classes, or to strike at all evils at the same time or in the same way. It could deal with the different professions according to the needs of the public in relation to each." It has also been said by the high court that "A statute is not invalid under the Constitution because it might have gone farther than it did" (*Roschen* v. *Ward,* 279 U.S. 337, 339 [73 L.Ed. 722, 729, 49 S.Ct. 336]); and that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" (*Williamson* v. *Lee Optical Co.,* 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461]). ■ California's courts are in agreement: ". . . 'The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident.' " (*In re Ricky H.,* 2 Cal.3d 513, 521-522 [86 Cal.Rptr. 76, 468 P.2d 204]; and see *Norsco Enterprises* v. *City of Fremont,* 54 Cal.App.3d 488, 498 [126 Cal.Rptr. 659].)

III. ■ Naismith produced expert professional testimony in the superior court which tended to impugn the wisdom, and the above-

related purposes, of section 1658.1. But we opine that determination of the wisdom and public purpose of such a statute is best left to the Legislature. Even though we were to agree with Naismith's, and its witnesses', view of the statute, unless we can "brand it as beyond the pale of reason" we may not find it in contravention of due process or the equal protection of the laws. "To do so would be to seriously erode our constitutional function." (See *Schwalbe* v. *Jones,* 16 Cal.3d 514, 523 [128 Cal.Rptr. 321, 546 P.2d 1033].) "Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature." (*Estate of Horman,* 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785] [cert. den., 404 U.S. 1015 (30 L.Ed.2d 662, 92 S.Ct. 672)].)

IV.   Nor do we find merit in Naismith's contention that: "Any original validity Bus. and Prof. Code § 1658.1 had has been abrogated by changed conditions."

It is argued: "[T]he evidence showed and the Court found that there is a substantial and increasing public demand for direct service prepaid dental care [as is furnished by Naismith], and that the provision of such care is drastically limited by Bus. and Prof. Code § 1658.1. [¶¶] In the whole health care field only dentistry has been unable to keep abreast of the times, primarily because of the presence of Bus. and Prof. Code § 1658.1. Like the guest statute in *Brown* v. *Merlo* [8 Cal.3d 855 (106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505)], Bus. and Prof. Code § 1658.1 evolved at a time when the rendition of medical care was far different than it is now. Whatever justification it may have had years ago has long since disappeared, and so should it." The argument may have merit, but again it is our opinion that it would more properly be addressed to the Legislature. As previously suggested: "It is not our province to weigh the desirability of the social or economic policy underlying the statute or to question its wisdom; they are purely legislative matters." (*Allied Properties* v. *Dept. of Alcoholic Beverage Control,* 53 Cal.2d 141, 146 [346 P.2d 737]; *Estate of Carlson,* 9 Cal.App.3d 479, 485 [88 Cal.Rptr. 229, 41 A.L.R.3d 825]; *Robinson* v. *Sacramento City etc. Sch. Dist.,* 245 Cal.App.2d 278, 290 [53 Cal.Rptr. 781].)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied April 20, 1977, and appellant's petition for a hearing by the Supreme Court was denied May 19, 1977. Bird, C. J., did not participate therein.