[Civ. No. 39546. First Dist., Div. One. Dec. 29, 1977.]

ALLAN C. REES, Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE, Defendant and Respondent.

**COUNSEL**

Frederick W. Bray for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Robert E. Murphy, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**RACANELLI, P. J.**—Appellant appeals from the judgment of the trial court denying his petition for a writ of mandate directing respondent to set aside and vacate its order that appellant desist and refrain from performing certain activities[1] without first obtaining a real estate license. The issues framed by the pleadings were tried below upon the administrative record and the briefs filed by the parties. Following the hearing the trial court rendered its findings of fact and conclusions of law, reproduced in pertinent part in the margin.[2] Appellant neither objected to the proposed findings nor submitted counterfindings.

---

[1] The order issued by respondent (under authority of Bus. & Prof. Code, § 10086) provides, in substance, that appellant desist and refrain from: (1) using, publishing, circulating or distributing any materials for the purpose of soliciting for prospective tenants; and (2) furnishing rental information to prospective tenants where they are obligated to pay a fee in advance of services whether or not a rental is obtained through such services, without first obtaining a real estate license from respondent.

[2] "FINDINGS OF FACT
"I
"Since on and before August 21, 1974, Respondent [Rees], his agents and his employees have engaged in the business of soliciting for prospective tenants of real

Appellant's contentions present questions concerning (1) the sufficiency and propriety of the findings; and (2) whether the real estate licensing statutes and regulations may be validly applied to appellant's business activities.

I

■ Appellant initially complains that the trial court failed to exercise its independent judgment in making necessary findings and conclusions on the material issues presented. In essence, he contends that the similarity between the findings of the court and those upon which respondent based its administrative decision suggests an absence of

property under the fictitious name and style, 'Rental Data Systems' and 'Consumer Data Systems'. On August 21, 1974, in said capacity of soliciting for prospective tenants of real property, Respondent caused to be published and printed in a newspaper known as El Cerrito Journal, El Cerrito, California, the following classified advertisements:

"(a) 'Older 4-plex, 1 bedroom, $145, Garden 548-8999. $15. RENTAL DATA SYSTEM. 247'

"(b) '$300. 2-PLUS bedroom house, Rockridge. 548-8999. $15. RENTAL DATA SYSTEM. 462.'

"(c) '$200. 3-PLUS bedroom house, skylights. 548-8999. $15. RENTAL DATA SYSTEM'

"(d) '$275. 2-PLUS bedroom house, garage. 548-8999 $15. RENTAL DATA SYSTEM. 365'

"(e) 'SPRUCE, $100, small studio, flat. 548-8999. $15. RENTAL DATA SYSTEM. 404'

Respondent was not the owner of the real property described in said advertisements at the time said advertisements were caused to be published and printed in the aforementioned El Cerrito Journal. Respondent caused said advertisements to be published and printed in expectation of the receipt of compensation for furnishing said rental information concerning said real property to prospective tenants.

"II

"On October 9, 1974, Respondent's agents and employees entered into a written contract with Steven Thomas, hereinafter referred to as Thomas, a Deputy Real Estate Commissioner of the State of California, to furnish rental information to Thomas for a Fifteen Dollar ($15) fee, which sum Thomas was obligated to pay in advance of receiving said rental information. On October 9, 1974, Respondent's agents and employees collected said Fifteen Dollar ($15) fee from Thomas. Thereafter, Respondent's agents and employees furnished rental information to Thomas. . . .

"CONCLUSIONS OF LAW

"Pursuant to the foregoing Findings of Fact the following Conclusions of Law are now made:

"I

"Respondent has engaged in the business and acted in the capacity of a real estate licensee within the State of California pursuant to sections 10131(b) and 10132 of the California Business and Professions Code and section 2850, Article 17, Title 10 of the California Administrative Code.

"II

"Respondent has been in violation of section 10130 of the California Business and Professions Code and accordingly grounds for issuance of a desist and refrain order thereby exists pursuant to section 10086 of the Business and Professions Code. . . ."

independent exercise of judicial discretion. Such complaint is groundless.

As previously stated, the record does not indicate that appellant either objected to the findings, proposed counterfindings and conclusions, or otherwise manifested that an "omission, ambiguity or conflict [in the findings] was brought to the attention of the trial court . . . ." (Code Civ. Proc., § 634.) Under such circumstances, a reviewing court must assume the existence of any findings and conclusions favorable to respondent in support of the judgment. (Code Civ. Proc.; § 634; *In re Marriage of Dawley* (1976) 17 Cal.3d 342, 354 [131 Cal.Rptr. 3, 551 P.2d 323]; *Banville* v. *Schmidt* (1974) 37 Cal.App.3d 92, 102 [112 Cal.Rptr. 126]; *Associated Creditors' Agency* v. *Dunning Floor Covering, Inc.* (1968) 265 Cal.App.2d 558, 559 [71 Cal.Rptr. 494]; *Meacham* v. *Meacham* (1968) 262 Cal.App.2d 248, 253 [68 Cal.Rptr. 746].)

█ In interpreting the language of Code of Civil Procedure section 634, it has been held that a failure to file objections or counterfindings, or to request special findings as therein provided, constitutes a waiver of any claim that such findings are not sufficiently specific. (*Shanahan* v. *Macco Constr. Co.* (1964) 224 Cal.App.2d 327, 333 [36 Cal.Rptr. 584].) Appellant's companion claim of error in the court's failure to specifically find whether respondent exceeded its jurisdiction in not proceeding in the manner required by law, and whether the administrative decision was supported by the findings and evidence, actually relate to conclusions of law rather than factual determinations. █ The conclusions of law, in and of themselves, are of no legal consequence and "despite their mention in C.C.P. 632, . . . are a relatively useless appendage. The important conclusion of law is the *judgment.* If the findings support the judgment [as here] it will be affirmed, regardless of whether the findings support the conclusions, or whether the conclusions of law are consistent or properly stated, or even if the conclusions are omitted entirely." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 304, p. 3113; see also *Estate of Grimble* (1974) 42 Cal.App.3d 741, 750 [117 Cal.Rptr. 125], citing the text.)

█ Assuming, arguendo, that the proper standard of review of the evidence required the application of the independent judgment test (see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242];

Code Civ. Proc., § 1094.5, subd. (c)), the record clearly demonstrates that the trial court "exercised its independent judgment on the evidence" in reaching its decision. Appellant's implied assertion, without supporting authority, that the superficial similarity between the judicial and administrative findings somehow casts doubt upon the validity of the former is specious and without merit.

Appellant's remaining claim of insufficiency of the evidence regarding application of the licensing statutes and regulations to his activities is discussed hereafter.

## II

Appellant argues that respondent has no jurisdiction to regulate the business activities in question. This argument is broadly premised on three theories: (1) that the provisions of the California Real Estate Law[3] are inapplicable in the absence of substantial evidence supporting a factual determination of the requisite licensee status; (2) his acts fall within the "finder's" exception to the licensing requirements; (3) the licensing statutes, as applied, are unconstitutionally overbroad.

### Licensee Status

■ Appellant challenges the findings and conclusions of the court that his activities are circumscribed by the licensing statutes and regulations governing real estate licensees (Bus. & Prof. Code, §§ 10130-10132[4]) and "advance fee" rental agents (Cal. Admin. Code, tit.

---

[3]Division 4, part 1, chapters 1-3 of the Business and Professions Code, section 10000 et seq.; title 10, California Administrative Code, article 17, sections 2850-2856.

[4]All references to code sections are to the Business and Professions Code unless otherwise designated. The referenced sections provide in relevant part as follows: Section 10130, "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department. . . ."

Section 10131: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others: . . . (b) Leases or rents or offers to lease or rent, *or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, . . .*" (Italics added.)

Section 10132 defines a real estate salesman as a "natural person who, for a compensation or in expectation of a compensation, is employed by a licensed real estate broker to do one or more of the acts set forth in Sections 10131 [and other sections not here involved]."

10, art. 17, § 2850[5]). He argues that these provisions apply only to conduct of *licensed* brokers or salesmen (it was stipulated that appellant was not so licensed) and that there was no evidence he acted in the capacity of a licensee. Neither argument is supported in reason or the record.

The evidence considered below discloses that appellant owns and operates a property rental data service initially under the name of "Rental Data Systems" and thereafter as "Consumer Data Systems" (CDS) providing rental information to prospective tenants. The service consists of a printed pamphlet furnished to subscribers upon payment in advance of a $15 fee, containing descriptions and terms of available rentals; the "availability list" or pamphlet is produced in a typical classified-advertisement format and lists the address of the rental and telephone number of the advertiser. Appellant provides his advertising service to rental advertisers free of charge; his major source of advertisers consists of landlords or agents familiar with his "free advertising" service, and other listings obtained through direct solicitation of advertisers culled from the classified section of local newspapers of general circulation. Appellant solicits potential subscribers to his service by publishing many of his advertisers' rentals in such newspapers, generally describing the rental unit and cost but without identifying data. These "ads" are internally coded and provide appellant's business address and telephone number, e.g., finding number 1. (Fn. 2, *ante.*) Prospective tenants inquiring about advertised rentals are informed that the listed rentals are currently available and, upon advance payment of the subscription fee, are furnished a copy of a completed pamphlet containing the address and telephone number for each described rental. The subscription includes the privilege to "call-in" daily for a period of 30 days to receive up-dated matching rental information;[6] the call-in service was renewable for an additional 30 days at the rate of $5 per renewal. The subscription fee was not automatically refunded in the

[5]Section 2850 defines advance fee rental agents as follows: "An 'advance fee rental agent' is: (a) a real estate licensee who negotiates rentals or furnishes rental information to prospective tenants whereby they are obligated to pay a fee in advance of services whether or not a rental is obtained through such services, (b) a real estate licensee who solicits or obtains rental listings from landlords or managers in expectation of compensation by including them in advance fee rental listings to be supplied prospective tenants."

[6]Each subscriber received an identifying number at the time of subscription coded to his individual rental criteria; upon calling in and giving his identifying number, the subscriber was furnished with new or additional listings matching his criteria.

event a rental was not obtained by the subscriber. While CDS did not directly participate in rental negotiations between an advertiser and prospective tenant, CDS would routinely solicit information relating to specific lease terms and conditions and would frequently inquire of both advertiser and subscriber whether they would negotiate certain terms (mainly allowance of pets and children); occasionally, it would offer opinions concerning average rental prices in a given area.

The record amply supports the court's findings that appellant, without being validly licensed, solicited listings of nonowned rentals and prospective tenants for "a compensation or in expectation of a compensation." (§ 10131.)

In a factually similar case interpreting an earlier version of section 10131, where the licensee urged a similar defense of being engaged solely in the sale of information (lists of names and descriptions of available rentals), it was held that such conduct constituted the placing of real estate for rent within the meaning of the licensing statute. (*Dyer* v. *Watson* (1953) 121 Cal.App.2d 84, 88-89 [262 P.2d 873].)

Additionally, the record demonstrates that appellant was regularly engaged in the business of furnishing rental information to prospective tenants for a $15 nonrefundable advance fee, conduct constituting regulable activities as an "Advance fee rental agent" within the meaning of section 2850 of the Administrative Code. The trial court's findings, supported by substantial evidence, as here, may not be disturbed on appeal. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

Appellant's claim that the subject licensing statutes and regulations cannot apply by reason of his nonlicensed status is illusory. A similar claim was made and rejected in *People* ex rel. *Savage* v. *L. A. Trust Deed etc. Exchange* (1961) 190 Cal.App.2d 66, 74 [12 Cal.Rptr. 144], where the court stated: "As to the status of appellant salesmen, it was contended below . . . that by legal definition a real estate salesman is one who works for a licensed real estate broker (Bus. & Prof. Code, § 10132.1); therefore, since Exchange was not licensed, its salesmen could not be real estate salesmen. The point is a tenuous one and is answered by the equitable maxim, 'That which ought to have been done is to be regarded as done . . .' (Civ. Code, § 3529). Appellant salesmen were performing acts defined as duties of real estate salesmen [citation]; they were properly so regarded, and enjoined, by the trial court." Since the

business activities of appellant required a valid real estate license, his claim of immunity in having failed to be so licensed is hardly persuasive. Such unlicensed activities were in direct violation of section 10130 and subject to restraint by administrative action of respondent agency. (See § 10086.)

### Finder's Exception

■ Appellant next contends, relying upon *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1 [106 Cal.Rptr. 761, 507 P.2d 65], that his activities fall within the long established "finder's" exception to the licensing laws. That doctrine, first announced in *Shaffer* v. *Beinhorn* (1923) 190 Cal. 569, 573-574 [213 P. 960], holds that where one simply acts as an intermediary or middleman in finding and introducing two parties to a real estate transaction, he merely acts as a finder and not as a broker within the meaning of the real estate licensing laws. (*Tyrone* v. *Kelley, supra,* at p. 12.) This contention is likewise unpersuasive.

Before the finder's exception may apply, it must appear that the "activity is limited to arranging an introduction [between the parties] . . ." (*Spielberg* v. *Granz* (1960) 185 Cal.App.2d 283, 290-291 [8 Cal.Rptr. 190]), and the services performed in bringing the parties together cannot involve any role " 'in negotiating the price or any of the other terms of the transaction. . . .' " (*Evans* v. *Riverside Internat. Raceway* (1965) 237 Cal.App.2d 666, 676 [47 Cal.Rptr. 187].) If the broker takes any part in the negotiations, no matter how slight, he is not a middleman but a broker. (*Rhode* v. *Bartholomew,* 94 Cal.App.2d 272, 280 [210 P.2d 768].)

Appellant steadfastly maintains his activity is simply that of a publisher of a "specialized consumer information medium." But appellant's legal status is not to be determined by a mere labelling process. As explained in *Batson* v. *Strehlow* (1968) 68 Cal.2d 662, 670 [68 Cal.Rptr. 589, 441 P.2d 101]: "In scrutinizing the record, we assess his function in the transaction by the role he played as well as by his description in the cast; we consider what he did, as well as what he was called."

Clearly, CDS engaged in activity beyond merely introducing landlords and tenants. It actively solicited some of its advertising landlords and most of its subscriber-renters. The listings compiled in its pamphlet provided additional data concerning the date the rental was available, the nature and terms of the leasehold, description of eligible tenants, and whether certain terms were negotiable. For an additional fee, it provided

updated rental information suitable to the prospective tenant's requirements. In addition, CDS volunteered advice to landlord and prospective tenant alike concerning average rental prices each could reasonably expect to charge or pay. Manifestly, CDS routinely engaged in a number of related business activities beyond merely locating, finding and introducing the parties, and—at times—played a direct role in negotiations between the principals. (See *Tyrone* v. *Kelley, supra,* 9 Cal.3d 1, 12; see also 1 Witkin, Summary of Cal. Law (8th ed.) § 238, p. 824.) The record supports the implied finding that appellant's activities did not fall within the finder's exception.

Further respondent contends that the finder's exception cannot be invoked on the facts shown, having been effectively eliminated through legislative enactments (Stats. 1965, ch. 172, operative Jan. 2, 1966). By amending the statute defining real estate brokers to include solicitations for rentals *or* prospective tenants (see italicized part of § 10131, subd. (b), fn. 4, *ante*), it is argued, the Legislature expressly intended to regulate business activities· involving compensable solicitations of prospective tenants as well as rental listings. Neither party has cited, nor have we found, any authority interpreting the added classification. ■ The legislative history,[7] while sparse, clarifies that the furnishing of lists of rental vacancies to prospective tenants for compensation is an act for which a real estate license is required. (See Review of Selected 1965 Code Legislation (Cont.Ed.Bar) p. 14.)

Appellant counters, citing *Tyrone* v. *Kelley, supra,* that the interpretation of the term "solicits" within the context of subdivision (d) of section 10131[8] as not being intended to eliminate the finder's exception applies with analogous force to the same term as used in subdivision (b). Appellant misconstrues the holding in *Tyrone.* In discussing the legislative purpose of the 1959 amendments, the Supreme Court stated: "In one sense of the quoted word all finders must solicit a prospective borrower or lender. . . . To hold that any act of solicitation of a borrower or lender would preclude a determination that a person was a finder would in effect eliminate the finder's exception to the licensing law. [¶] It

---

[7]Senate Bill No. 269, the enabling legislation, also amended a number of code sections merging business opportunity licenses with real estate licenses for purposes of uniform regulation and enforcement (notably §§ 10026, 10027, 10131.2, 10176 and 10177). Section 10146 was added imposing trust fund deposit and accounting requirements for advance fee collections.

[8]Subdivision (d), as amended in 1959, added to· the definitions of real estate broker "a person who, for a compensation . . . (d) Solicits borrowers or lenders . . . ."

is clear that the Legislature did not intend by the 1959 amendment to section 10131 to eliminate *entirely* the finder's exception but rather *intended to limit it* in one respect not relevant here. The . . . amendment . . . was made by . . . chapter 2117 of the 1959 statutes. Section 14 of that chapter makes clear that the purpose of the enactment . . . was the licensing of 'advance fee' operators who had 'sought to shield their activities under the guise of operating as mere finders or locators. . . .' The legislative statement of purpose in the section shows that the Legislature did not intend a departure from established principles relating to brokers and finders except as to the 'advance fee' operators, and the reference in the section to 'finders' reflects a legislative recognition that the finder's exception to the licensing law was recognized and continued with the exception of the 'advance fee' operators." (Italics added.) (*Tyrone* v. *Kelley, supra,* 9 Cal.3d 1, 9; see also fn. 6, pp. 9-10.)

In concluding that the legislative purpose was directed to the then rampant abuses of the "advance fee" operator, the court expressly acknowledged the limitation placed upon the finder's exception in that particular activity. (See § 10026 defining "advance fee" transactions.) ■ However, the court was not concerned with nor did it consider the intent or effect of the 1965 amendments to subdivision (b). In enacting the several amendments, the Legislature plainly expressed its intent to specifically regulate certain activities including the active solicitation of rental listings or prospective tenants in expectation of compensation. By so providing, the Legislature specifically excluded those activities from nonlicensed status and to that extent effectively terminated the finder's exception. (See *Tyrone* v. *Kelley, supra,* 9 Cal.3d 1, 12.) To hold otherwise would frustrate the clear legislative purpose and "strip the statute of much of the protection of the public interest it was designed to provide." (*Wickersham* v. *Harris* (10th Cir. 1963) 313 F.2d 468, 472; 5 U.C.Davis L.Rev. 154.)

■ Moreover, as found by the court below, appellant's activities in furnishing rental information to a prospective tenant for a fee payable in advance of services, falls within the separate licensee classification of "advance fee rental agent" as defined in section 2850, subdivision (a),[9] title 10 of the California Administrative Code (fn. 6, *ante*). Given the

---

[9]Sections 2850 through 2856 of the Administrative Code, pertaining to advance fee rental agents' transactions, were promulgated by the Commissioner of Real Estate under the authority of section 10080 as reasonably necessary for the enforcement of the provisions of the licensing statutes.

legislative history concerning past abuses associated with advance fee operators (*Tyrone* v. *Kelley, supra,* 9 Cal.3d 1, 9-10, fn. 6), it seems equally clear that the intendment of the regulation was to specifically supervise advance fee rental commerce in order to protect the public from similar reprehensible practices of unlicensed operators that once plagued the real estate lenders' and sellers' market.

## Constitutionality

■ Finally, chiefly in reliance on the early holding of *Whitcomb* v. *Emerson* (1941) 46 Cal.App.2d 263 [115 P.2d 892], appellant contends that the licensing statutes as applied to his activities are overbroad and violate the Fifth[10] and Fourteenth Amendments to the federal Constitution. While conceding the validity of the licensing statutes, he argues there is no reasonable relationship between the skills required in the conduct of his business and those subject to regulation under the real estate licensing laws. Focusing upon certain statutory qualifications[11] for a real estate license, he argues that to impose such irrelevant requirements upon him is arbitrary and unduly burdensome and tantamount to an unlawful taking of his property without due process and a denial of equal protection of the law. For reasons we explain, this claim is unsound.

*Whitcomb* (decided over three decades ago), in somewhat colorful prose found constitutional infirmity in a statute requiring a face masseuse to obtain a license in cosmetology. That holding was appropriately characterized in *Varanelli* v. *Structural Pest Control Board* (1969) 1 Cal.App.3d 217 [81 Cal.Rptr. 492], as a product of an "era less receptive to economic legislation." (*Id.* at p. 222.)

In *Naismith Dental Corp.* v. *Board of Dental Examiners* (1977) 68 Cal.App.3d 253 [137 Cal.Rptr. 133], involving a similar "due process" challenge, we pointed out that "In determining whether legislation is violative of due process, courts 'exercise an extraordinary power over a coordinate branch of government and perform a correspondingly narrow

[10]In his brief appellant refers interchangeably to constitutional "due process" and due process guaranteed by the Fifth Amendment. Since the challenge is directed to discriminatory state action, we construe the argument within the context of the Fourteenth Amendment.

[11]Section 10153 generally requires an applicant to demonstrate an understanding of real estate principles and conveyancing, familiarity with the nature of agency relationships, and have completed accredited course units in legal aspects of real estate and practice, economics or accounting or their equivalent.

function: we simply determine whether the statute reasonably relates to a legitimate governmental purpose.' [Citation.] 'The doctrine . . .—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded.' [Citation.] Before a court may declare an act of the Legislature invalid because of due process or other constitutional conflict, 'such conflict must be clear, positive, and unquestionable.' [Citation.]" (At p. 259.)

Moreover, "The current doctrine of judicial review of the reasonableness of regulatory legislation is that judicial examination of a statute under economic due process attack is completed when any fact or facts appear, or may be hypothesized, which the Legislature might rationally have accepted as the basis for a finding of public interest." (*Varanelli* v. *Structural Pest Control Board, supra,* 1 Cal.App.3d 217, 222.)

Herein, we may logically infer a legitimate public purpose that those engaged in the business of soliciting the general public as prospective tenants in anticipation of a compensation be required to meet minimum licensing requirements in order to regulate such conduct. The subject licensing scheme may be rationally hypothesized as an effort to protect prospective renters of real property from the actions of unprincipled or unqualified individuals. Similarly, the legislative history concerning "advance fee" activities in general evidences a valid legislative purpose, as interpreted by the administrative agency charged with enforcement of the licensing statutes in adopting section 2850 of the California Administrative Code, to oversee and regulate conduct involving the furnishing of rental information to prospective tenants upon payment of a nonrefundable advance fee. Accordingly, we do not find any due process violation by reason of the legislative amendments or the administrative regulations adopted to implement such purposes. Appellant has failed to sustain his burden of establishing an absence of a valid public purpose in the questioned enactments. (See *Naismith Dental Corp.* v. *Board of Dental Examiners, supra,* 68 Cal.App.3d 253, 260.)

 Nor can it be successfully argued that the licensing statutes, as applied, deprive appellant of equal protection under the law. Although appellant argues, without benefit of authority, that "no compelling state interest" appears justifying application of the statutes to his business activities, it is settled that a "cognizable 'fundamental interest' in the right to pursue employment . . . is clearly limited in scope to 'the common occupations of the community' and should not be applied to

professions whose technical complexity and intimate relationship to the public interest and welfare counsel greater deference to the legislative judgment." (*D'Amico* v. *Board of Medical Examiners*, 11 Cal.3d 1, 18 [112 Cal.Rptr. 786, 520 P.2d 10].)

In commenting upon the test of rational relationship applicable to economic legislation, the *D'Amico* court stated: "The first [test] is the basic and conventional standard for reviewing economic and social welfare legislation in which there is a 'discrimination' or differentiation of treatment between classes or individuals. It manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and 'requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784 [87 Cal.Rptr. 839, 471 P.2d 487].) 'So long as such a classification "does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground." [Citations.]' (*Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 367-368 [66 Cal.Rptr. 710, 438 P.2d 358].) Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.* [Citations.]

". . . . . . . . . . . . . . . . . . .

"The conventional 'rational relationship' test is traditionally applied in cases involving occupational licensing, . . ." (11 Cal.3d at pp. 16-17.)

Under the conceptualized standards of a legitimate state purpose previously discussed in the context of due process sufficiency, we conclude that the distinctions provided in the challenged statute and implementing regulations bear a rational relationship to that purpose. (*D'Amico* v. *Board of Medical Examiners*, *supra*, 11 Cal.3d 1, 18; *Varanelli* v. *Structural Pest Control Board*, *supra*, 1 Cal.App.3d 217, 222-224; *Naismith Dental Corp.* v. *Board of Dental Examiners*, *supra*, 68 Cal.App.3d 253, 262.)

Appellant's remaining assertion that his activities are protected under the First Amendment of the federal Constitution, is neither argued in his brief nor supported by citation of authority. Under such circumstances, we treat the matter as being waived. (6 Witkin, Cal. Procedure (2d ed.

1971) Appeal, § 425, p. 4391.) In any event, "Reasonable business regulations are valid even though elements of public expression are involved." (*Varanelli* v. *Structural Pest Control Board, supra,* 1 Cal.App.3d 217, 225.)

The judgment is affirmed.

Elkington, J., and Broussard, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.