134 F.3d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
JSH MANAGEMENT SERVICES, INC., Plaintiff-Appellant,
v.
HANNY MAGNETICS (HOLDINGS) LTD., Defendant-Appellee.
 No. 96-55652.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 19, 1997.
Decided Jan. 21, 1998.
 
 1
 Before: REINHARDT and TASHIMA, Circuit Judges, and FITZGERALD, District Judge.**
 
 
 2
 MEMORANDUM*
 
 
 3
 JSH Management, Inc., (JSH) is a California corporation with its principal place of business in Los Angeles. JSH provides management and consulting services, and its principal, James Herman, has extensive knowledge and experience in the consumer electronics industry. JSH was not at any pertinent time a licensed real estate broker or real estate salesman in California or any other state.
 
 
 4
 Hanny Magnetics (Holding) Ltd., (Hanny) is a company organized under the British Virgin Islands, with its principal place of business in Hong Kong.
 
 
 5
 In August of 1993, Hanny entered into a written Consulting Agreement with JSH whereby JSH was to provide special consulting services in connection with Hanny's attempt to acquire certain rights and assets of Tandy Corporation, TE Electronics, Inc., Tandy Marketing (Canada) Ltd., and Memtek International Ltd. and certain assets and rights of Memorex Telex Corporation and Memorex Telex, Inc. (Target Acquisitions). The terms of the Consulting Agreement were set forth in a letter from James Herman of JSH to Wong Sun of Hanny. The letter provided in part:
 
 
 6
 Effective on the date hereof, [Hanny] hereby engages J.S.H. to provide special consulting services as described below.... The special consulting services to be rendered to [Hanny] by J.S.H. shall consist of J. S.H.'s assistance in facilitating the negotiation of an agreement to acquire two target companies.
 
 
 7
 Beginning in August of 1993 and continuing until Hanny acquired the target companies, JSH provided consulting services to Hanny pursuant to the Consulting Agreement.
 
 
 8
 In November of 1993, Tandy Corporation, TE Electronics, Inc., Tandy Marketing (Canada) Ltd. and Memtek International Ltd., entered into an asset transfer agreement with Hanny (Tandy Acquisitions). The transaction successfully closed in December 1993. In connection with the Tandy Acquisitions, JSH negotiated the elimination of approximately $64.1 million in receivables from the transaction. JSH disputed that it "negotiated" within the meaning of the California Business and Professions Code sec. 10131. The purchase price for the Tandy Acquisition was approximately $71.5 million to $74 million.[1]
 
 
 9
 In connection with the Tandy acquisition, James Herman of JSH performed the following services. He discussed with Deloitte & Touche the scope of its engagement, discussed a letter of interest with Bob McClure of Tandy, proposed a schedule for meetings, transmitted Hanny's Second Draft Letter of Interest to McClure with the request that McClure "please call", met with McClure to work out a number of issues pertaining to both the purchase agreement and transition, met with McClure and proposed a number of ideas and later made a two-hour conference call in which the ideas were discussed further, spoke with McClure regarding changes in the language of the agreement, called McClure to discuss Hanny's concerns about a potential Memorex bankruptcy issue, met with McClure to discuss several ideas Mr. Herman hoped would be acceptable to Tandy, and had a conference call with McClure regarding proposed additional modifications to the Tandy purchase agreement which were not agreed to by Tandy.
 
 
 10
 On December 9, 1993, Memorex Telex Corporation and Memorex Telex, Inc entered into an asset purchase agreement with Hanny Acquisition Company, a wholly owned subsidiary of Hanny (MC § Acquisition). The purchase price for the MC § Acquisition was approximately $10.1 million to $14.6 million.[2]
 
 
 11
 In connection with the MCS acquisition, Mr. Herman discussed revisions to Hanny's letter of intent with John McGregor, President of Memorex computer Supplies, met with McGregor and discussed concerns and proposed new language and negotiated a new escrow agreement for the deposit, informed Wong Sun of Hanny that "we are making progress with MCS," discussed a revised term sheet with McGregor and worked with McGregor toward having an agreement ready for signature.
 
 
 12
 As of December 1993, JSH claimed expenses, base fees of $150,000, and contingent success fees of $1.3 million. Hanny paid the base fee of $150,000, plus $25,446.44 for expenses, and $533,313.92 for the contingent success fee. Hanny did not pay the remaining $881,233.40 of the contingent success fee.
 
 
 13
 On July 21, 1995, JSH filed a complaint for damages and declaratory relief asserting claims against Hanny for breach of a written contract and breach of an oral contract. JSH sought payment of its remaining contingent success fees of $881,233.40 plus interests and costs.
 
 
 14
 Hanny answered on August 25, 1995, asserting as an affirmative defense that JSH acted as a real estate broker within the definition of the California Business and Professions Code § 10131 and that the action was barred by § 10136 of the Code because JSH was not a duly licensed real estate broker.[3]
 
 
 15
 On February 16, 1996, JSH filed a motion for summary judgment seeking judgment it its favor on Hanny's first and second affirmative defenses. On March 4, 1996, Hanny filed an opposition to JSH's summary judgment motion and also filed a cross-motion for summary judgment in which Hanny sought judgment in its favor on the first and second affirmative defenses. On April 4, 1996, the district court granted Hanny's motion for judgment on its first affirmative defense and entered judgment against JSH on April 5, 1996. This appeal concerns Hanny's first affirmative defense only.
 
 
 16
 An order granting summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). In reviewing a grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.
 
 
 17
 Hanny's first affirmative defense, on which the district court granted summary judgment in favor of Hanny, asserted that JSH was not entitled to maintain a breach of contract action because JSH acted as a real estate broker with the meaning of § 10131 of the Code. Hanny argued that because JSH negotiated the sale of real estate and/or a business opportunity without a broker's license, JSH could not bring an action for payment for any brokering activities conducted in California.
 
 
 18
 The district court found that each target transaction involved the transfer of real estate and that JSH participated in negotiations in California. Accordingly, the district court found that § 10136 was implicated and that JSH could not maintain the action as a matter of law. The district court also concluded that § 10136 was constitutional. Therefore, the district court granted Hanny's motion for summary judgment on Hanny's first affirmative defense.
 
 
 19
 On appeal, JSH argues that the district court failed to recognize California's statutory mandate that a contract be recognized as lawful whenever possible. Cal. Civ.Code § 1643. JSH argues that the Consulting Agreement required the payment of the contingent success fee whether or not JSH provided consulting services. Thus, JSH argues that the district court should have construed the Consulting Agreement to require Hanny to pay the fee.
 
 
 20
 JSH also argues that §§ 10131 and 10136 should not apply to JSH, because JSH neither brokers, lists, nor holds itself out as a negotiator of real estate or business transactions. JSH argues that the district court erred in failing to find that JSH was a "finder" who simply brought two parties together.[4]
 
 
 21
 JSH also argues that the district court erred in finding that the assets purchased by Hanny were "business opportunities", and that the mere inclusion of real estate in the transaction should not trigger the licensing requirement. JSH also argues that a genuine issue of material fact exists as to whether JSH "negotiated" while in California.
 
 
 22
 Finally, JSH argues that the district court erred in finding that the Code is constitutionally valid.[5]
 
 
 23
 We first address whether § 10136 applies to JSH.
 
 
 24
 As noted above, § 10136 applies to a person who takes any part in negotiating the transaction. Here, the facts and transaction documents show that JSH participated in negotiating the Tandy and MCS acquisitions, and that JSH does not fit into the "finders" exception to § 10136. In Tyrone v. Kelley, 9 Cal.3d 1, 8, 11-12, 507 P.2d 65, 106 Cal Rptr. 761 (1973), the court stated:
 
 
 25
 Numerous cases have held that one who simply finds and introduces two parties to a real estate transaction need not be licensed as a real estate broker. Such an intermediary or middleman is protected by the finder's exception to the real estate licensing laws ...
 
 
 26
 ............................................................
 
 
 27
 ....................
 
 
 28
 * * *
 
 
 29
 It is true that the finder's exception presents a seeming anomaly in our law. In general, an unlicensed individual may recover an agreed compensation where he merely finds a buyer, seller, lender, or borrower, but if in addition to finding such person he goes further and helps to conclude the transaction by taking part in negotiating the details of the transaction, compromising or composing differences between the parties, by way of example, he may not recover the agreed compensation. Id.
 
 
 30
 Rees v. Dept. of Real Estate, 76 Cal.App.3d 286, 295, 142 Cal.Rptr. 789 (1977) also addressed the "finders" exception:
 
 
 31
 Before the finder's exception may apply, it must appear that the 'activity is limited to arranging an introduction [between the parties] ...' and the services performed in bringing the parties together cannot involve any role in "negotiating the price or any other terms of the transaction.... " If the broker takes any part in the negotiations, no matter how slight, he is not a middleman, but a broker.
 
 
 32
 Id. (citations omitted).
 
 
 33
 Here, JSH performed services which amounted to far more than "slight" negotiations or mere introduction of the parties. In addition to the facts noted above, which discussed JSH's role in negotiating the acquisitions, JSH negotiated the elimination of the purchase of $64 million in accounts receivable from the Tandy acquisition, and Hanny probably would not have completed the transaction had the accounts receivable not been eliminated. Additionally, the Consulting Agreement provided that:
 
 
 34
 The special consulting services to be rendered to [Hanny] by J.S.H. shall consist of J. S.H.'s assistance in facilitating the negotiation of an agreement to acquire two target companies.... J.S.H. shall be responsible for coordinating and supervising communications between [Hanny] and the Targets and shall have access to all parties and their counsel, accountants, investment bankers, consultants, employees, agents and interpreters as and where necessary for the purpose of carrying out its duties and responsibilities hereunder.
 
 
 35
 The facts establish that JSH actively participated in negotiating the Tandy and MCS acquisitions for Hanny, and JSH is not entitled to the "finders" exception to § 10136.
 
 
 36
 We next discuss whether the district court, pursuant to California Civil Code § 1643, should have construed the Consulting Agreement to obligate Hanny to pay the contingent success fee. California Civil Code § 1643 provides that "a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." JSH argues that cases applying § 1643 obligated the district court to construe the Consulting Agreement in favor of its validity, even if some of the acts performed and services provided required a California Real Estate license.
 
 
 37
 In Freeman v. Jergins, 125 Cal.App.2d 536, 546, 271 P.2d 210 (1954), plaintiff entered into an oral contract with defendant in which defendant agreed to pay plaintiff a commission for finding and arranging an introduction to a buyer of defendant's interest in an oil company. After a sale was completed, defendant failed to pay plaintiff's commission. Plaintiff sued to recover his commission, and was successful after the trial court found that plaintiff's acts were those of a "finder" who did not negotiate the sale. Defendants appealed, arguing that the agreement between plaintiffs and defendants was illegal because plaintiff did not have a brokers license. The court of appeals affirmed, ruling that the trial court's determination that Plaintiff was a "finder" was supported by substantial evidence. The court of appeals also noted that a contract will not be declared void because it may have been performed in an illegal manner. Here, JSH is not within the "finders" exception to the licensing requirement, and Freeman does not apply to the Agreement between JSH and Hanny.
 
 
 38
 In Broffman v. Newman, 213 Cal.App.3d 252, 261 Cal. Rptr 532 (1989), plaintiff sued to recover fees previously paid to an unlicensed person, and the statute prohibiting an unlicensed person from bringing an action, § 10136, was not at issue. Hanny has not sued JSH to recover fees already paid to JSH, and Broffman does not apply.
 
 
 39
 In Executive Landscape Corp. v. San Vincente Country Villas IV Ass'n., 145 Cal.App.3d 496, 500, 501, 193 Cal.Rptr. 377 (1983), the plaintiff brought an action against a condominium association to recover under a written contract for the management and landscape maintenance of a condominium complex. The trial court sustained the Associations' demurrer on the ground that plaintiff did not have a contractor's license under California Business and Professions Code § 7031. The court of appeals reviewed the parties' contract for landscaping services and determined that it was factually possible for Executive Landscape to perform the contract without performing services requiring a contractor's license. The court of appeals reversed the trial court, noting that where the form of the contract indicates that some services requiring a license may be performed under it, "[a] contractual clause calling for hybrid services does not on its face render the contract unenforceable." 145 Cal.App.3d at 501.
 
 
 40
 Executive Landscape does not apply to the facts raised here. Nothing in Executive Landscape permits an unlicensed contractor to recover compensation if services requiring a license are performed under the contract. Here, the Consulting Agreement provides for services subject to § 10136 in that it required JSH to assist in negotiating agreements for the acquisition of two "target companies" or "business opportunities". The actual performance of the contract involved negotiation and acquisition of the "business opportunities" and involved the purchase and lease of real property. The district court did nor err by failing to apply Cal. Civil. Code § 1643 and to construe the Consulting Agreement in favor of its validity.[6]
 
 
 41
 We now address JSH's argument that the district court erred in finding that the assets purchased by Hanny were "business opportunities," and that the mere inclusion of real estate in the transaction should not trigger the licensing requirement. JSH also argues that a genuine issue of material fact exists as to whether JSH "negotiated" while in California.
 
 
 42
 JSH contends that the Tandy and MCS acquisitions involved the purchase of "discrete assets" and not California "business opportunities." A "business opportunity," however, includes "the sale or lease of the business and goodwill of an existing business enterprise or opportunity." California Business and Professions Code § 10131.
 
 
 43
 Here, the Consulting Agreement states that JSH will assist in the negotiation to acquire "two target companies" as opposed as to "discrete assets." The Tandy acquisition involved acquisition of substantially all the assets of Memtek Products, including Memtek's goodwill.[7] Clearly, the Tandy acquisition involved a "business opportunity" as defined in § 10130. Similarly, the MCS acquisition included "substantially all of the assets, properties, interests in properties and rights of the [Memorex] Computer Supplies Business."
 
 
 44
 The undisputed facts establish that JSH provided services pursuant to the Consulting Agreement in California, and those services amounted to the negotiation of "business opportunities" and real estate subject to the California licensing statutes. The district court did not err in finding that the assets purchased were "business opportunities."
 
 
 45
 Finally, we address whether the California Business and Professions Code § 10136 violates the Commerce Clause of the United States Constitution. The Commerce Clause provides that "congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const., Art. § 8, cl. 3. Thus, the Commerce Clause "is a limitation upon the power of the States." Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 371 (1976), quoting Freeman v. Hewitt, 329 U.S. 249, 252 (1946). Nonetheless:
 
 
 46
 A state statute must be upheld if it "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."
 
 
 47
 Edgar v. Mite Corp., 457 U.S. 624, 640 (1982) (citations omitted).
 
 
 48
 We conclude that § 10136 does not violate the commerce clause. Section 10136 directly controls brokerage activities conducted in California, regulates a legitimate public interest, and any burden it imposes on interstate commerce is incidental in light of California's interest in preventing unlicensed real estate brokers from conducting business in California.
 
 
 49
 JSH also argues that the California Real Estate licensing law is impermissibly vague in violation of the due process clause. A law violates the due process clause if its terms are so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application ..." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926) (citations omitted). Here, the district court noted that "California courts have defined brokering activities to include any acts of negotiation beyond mere introduction of principals." Thus, engaging in consulting services which includes participating in negotiations in California for the sale of real estate or a business opportunity implicates the statute. The district court correctly reasoned that "the statute is not so vague that persons of normal intelligence would guess at its meaning or its application."
 
 Affirmed
 
 50
 REINHARDT, J., dissenting.
 
 
 51
 I dissent because I do not believe that Cal. Bus. & Prof.Code § 10136 applies to the contingent success fee provided for in the Consulting Agreement. Section 10136 does not allow an unlicensed person to bring an action for "collection of compensation for the performance of any of the acts" covered by the real estate licensing statute. Two provisions of the Consulting Agreement demonstrate that the contingent success fee is not compensation for any such services. The first states that the contingent success fee is "[i]n addition to payments for consulting services." The second gives Hanny the right to terminate JSH's services at any time after execution of the contract but still requires the payment of the contingent success fee--even if the services are terminated immediately after execution. While these provisions do not clearly set forth what the contingent success fee is compensation for, they do make it clear that it is for something other than the type of services covered by the statute. Thus, I would hold that as a matter of law § 10136 does not apply to the contingent success fee and grant summary judgment in favor of JSH on the first affirmative defense.[1]
 
 
 52
 I note that JSH contends that the application of § 10136 to its services under the Consulting Agreement renders the California real estate licensing statute unconstitutionally vague under the due process clause. While I agree with the majority that the licensing statute is not impermissibly vague, the requirement that JSH obtain a California real estate broker's license in order to perform consulting services in connection with multi-million-dollar acquisitions of foreign corporations' assets and rights may be unconstitutionally arbitrary. Because JSH has not raised that due process issue, however, I reserve judgment on that question.
 
 
 
 **
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir. R. 36-3
 
 
 [1]
 The Tandy Acquisition included the purchase of real estate in California and the lease of real estate in Texas. The Tandy Acquisition also involved acquisition of substantially all of the assets of Memtek Products, including Memtek's goodwill
 
 
 [2]
 The MCS Acquisition included the assumption of rights an liabilities under leases of California real property, and substantially all of the assets properties, interests and rights of the Memorex Computer Supplies Business
 
 
 [3]
 California Business and Professions Code § 10131 provides in pertinent par:
 A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others:
 (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listing of, or negotiates the purchase, sale or exchange of real property or a business opportunity.
 (b) Leases or rents or offers to lease or rent, or places for
 rent, or solicits listing of places for rent, or solicits for prospective tenants or negotiates the sale, purchase or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities.
 California Business and Professions Code § 10136 provides:
 No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or a real estate salesman at the time the alleged cause of action arose.
 
 
 [4]
 One who simply finds and introduces a prospective buyer or seller to another need not be licensed by the state to recover a commission for services. This is the "finders exception" to the real estate licensing statute. Preach v. Monter Rainbow, 12 Cal.App. 4th 1441, 1452, 16 Cal.Rptr.2d 320, 326 (1993)
 
 
 [5]
 This is essentially a case of statutory interpretation and not contract interpretation. California law permits the use of extrinsic evidence to create an ambiguity in a contract even where the language of the contract is clear. Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 442 P.2d 641, 69 Cal.Rptr. 561 (1968); Wilson Arlington Co. v. Prudential Ins. Co. of America, 912 F.2d 366, 370 (9th Cir.1990). Here, the parties have not made any argument which would implicate Pacific Gas
 
 
 [6]
 JSH argues that the real estate licensing law should not apply to consultants. Neither the statute nor case law creates an exception for consultants. In any event, consultants are certainly covered by the language of § 10136 if they engage "in the business or act[ ] in the capacity of a real estate broker or a real estate salesman."
 
 
 [7]
 The purchased assets of the Memtek Products Asset Transfer Agreement included:
 [A]ll the assets of Memtek Products ... including without limitation owned and leased real estate ... leasehold improvements, furniture and fixtures, construction in progress, machinery and equipment, inventory, accounts receivable, contracts and agreements, books and records, intellectual property rights, prepaid expenses .... goodwill and Tandy's 50% interest in Tandy Rank.
 
 
 [1]
 Even if I were to conclude that on its face the Consulting Agreement appeared to provide that the contingent success fee was compensation for services covered by the statute, I would still reverse because of the existence of material issues of fact with respect to the fee's purpose. Under California law, extrinsic evidence may be considered if it is relevant to a reasonably susceptible interpretation of the contract. See Pacific Gas Co. v. G.W. Thomas Drayage & Rigging Co., 442 P.2d 641 (Cal.1968). JSH has submitted a declaration explaining that the contingent success fee was to compensate for information JSH would provide upon execution of the Consulting Agreement and not for any services covered by the statute. Thus, I believe that, at minimum, a material issue of fact exists as to whether the contingent success fee was meant as compensation for services covered by the statute