[No. A060343. First Dist., Div. Three. June 29, 1994.]

BROADMOOR POLICE PROTECTION DISTRICT, Plaintiff and Appellant, v.
SAN MATEO LOCAL AGENCY FORMATION COMMISSION et al., Defendants and Respondents.

**COUNSEL**

John C. Moran for Plaintiff and Appellant.

Stan Gustavson, City Attorney, Thomas F. Casey III, County Counsel, Mary K. Raftery, Deputy County Counsel, McDonough, Holland & Allen and Michelle Marchetta Kenyon for Defendants and Respondents.

## OPINION

MERRILL, J.—This case concerns the constitutionality of the protest provisions regarding municipal and county service area reorganizations and annexations contained in the Cortese-Knox Local Government Reorganization Act of 1985 (the Act), Government Code section 56000 et seq.[1] Broadmoor Police Protection District (Broadmoor) appeals from a judgment on the pleadings entered in favor of respondents, the City of Daly City (City) and San Mateo County Local Agency Formation Commission (LAFCO). Broadmoor contends that the mechanism for determining a majority protest under the statute violates the equal protection clauses of the state and federal Constitutions. We have concluded that the statute passes constitutional muster, and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

City filed a proposal for reorganization with LAFCO on September 25, 1990, seeking annexation of 30.75 acres in an area just north of Colma. This reorganization entailed the detachment of the subject area from appellant Broadmoor and from the Colma Fire Protection District. After a public hearing in accordance with the Act, LAFCO approved the reorganization on February 20, 1991. LAFCO found that the territory to be annexed was uninhabited,[2] and designated the City as the conducting authority pursuant to section 56029 for purposes of reorganization proceedings under section 57000 et seq.

Because the subject territory was legally uninhabited, the applicable statutes required that the conducting authority proceed with the reorganization unless landowners owning 50 percent or more of the assessed value of the land within the territory filed and did not withdraw written protests to the proposed reorganization. If landowners owning 50 percent or more of the assessed value of the land within the territory protested the proposed reorganization, it would have to be abandoned. (§§ 57075, subd. (b), 57078, subd. (a).)

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

[2] Under section 56046, territory is deemed "inhabited" if there are 12 or more registered voters residing there. If fewer than 12 registered voters reside in the territory, it is deemed "uninhabited."

In accordance with the applicable statutes, the City held a duly noticed public meeting on March 25, 1991, to evaluate written protests submitted against the proposed reorganization. The city council found that written protests filed by landowners within the subject area amounted to less than 50 percent of the total assessed value of land within the affected district. Accordingly, on April 22, 1991, the city council adopted a resolution finding that a majority protest did not exist, and approved the reorganization annexing the subject district to the City in accordance with section 57075, subdivision (b)(2).

On June 20, 1991, Broadmoor filed a complaint to invalidate the proceedings. The complaint contended that as a result of Proposition 13, under which real property is reassessed only at the time of sale or change in ownership, the statutory procedure based on majority protest by landowners owning 50 percent or more of the assessed value of the land within the affected territory is inequitable, because of disparities in assessed value based on time of purchase. The complaint asked the court to declare the protest valuation invalid and void, and to order that it be undertaken again using current full market valuations of all land in the affected territory. The complaint alleged that the method of valuing landowner protests suffered from a "statutory and constitutional infirmity" because it did not "reflect the current full market value of all the land in the affected territory."

The City, joined by LAFCO, filed a motion for judgment on the pleadings, arguing that Broadmoor had failed to state a cause of action. The trial court granted the motion, and gave Broadmoor 15 days to amend its complaint. On April 27, 1992, Broadmoor filed an amended complaint alleging that it had suffered certain specified damages from the reorganization and annexation. The amended complaint contained the same generalized allegations of statutory and constitutional infirmity.

Thereafter, the trial court overruled a demurrer to the amended complaint, but granted a subsequent motion for judgment on the pleadings filed by both the City and LAFCO. In its order granting the motion, the trial court found that the provisions of section 57078, subdivision (a) "are rationally related to a legitimate governmental purpose and are therefore constitutional." The trial court entered judgment in favor of the City and LAFCO, and this appeal followed.

### STANDARD OF CONSTITUTIONAL REVIEW

Appellant Broadmoor contends that the statutory procedure applied in this case for protesting the City's annexation of the Broadmoor territory

constituted an unconstitutional denial of equal protection. Appellant bases its contention on the fact that, since the passage of Proposition 13, real property is subject to reassessment only upon change in ownership, rather than at regular periodic intervals. Under sections 57075 and 57078, a majority protest to any proposed local government reorganization under the Act will require the abandonment of the proposed reorganization.[3] Section 57078 establishes different criteria for a majority protest depending on whether the affected territory is inhabited or uninhabited.[4] In the case of *uninhabited* territory—that is, territory in which fewer than 12 registered voters reside (§ 56046)—a "majority protest" may be made by the written protests of landowners owning 50 percent or more of the assessed value of the land within the territory. (§ 57078, subd. (a).)

Appellant opines that because of the disparity in assessed values resulting from the enactment of Proposition 13, the effect of this provision is to give more voting strength to landowners who recently purchased their property, and whose land would thus have significantly higher assessed valuation than that of landowners whose ownership may predate the passage of Proposition 13. Contending that this preference to recent property owners is arbitrary and a violation of equal protection, appellant asserts that only a system in which the value of all affected land is assessed simultaneously would be constitutional.

In any claim that a statute is unconstitutional, there is a strong presumption of constitutionality, and the courts must resolve doubts in favor

---

[3]Section 57075 provides in pertinent part: "In the case of registered voter districts or cities, where a change of organization or reorganization consists solely of annexations, detachments, or formation of county service areas, or any combination of those proposals, the conducting authority, not more than 30 days after the conclusion of the hearing, shall adopt a resolution making a finding regarding the value of written protests filed and not withdrawn, and take one of the following actions . . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"(b) In the case of uninhabited territory, take either of the following actions:

"(1) Terminate proceedings if a majority protest exists in accordance with Section 57078.

"(2) Order the change of organization or reorganization if written protests have been filed and not withdrawn by owners of land who own less than 50 percent of the total assessed value of land within the affected territory."

[4]Section 57078 provides: "In the case of any reorganization or change of organization, a majority protest shall be deemed to exist and the proposed change of organization or reorganization shall be abandoned if the conducting authority finds that written protests filed and not withdrawn prior to the conclusion of the hearing represent *any* of the following:

"(a) In the case of uninhabited territory, landowners owning 50 percent or more of the assessed value of the land within the territory.

"(b) In the case of inhabited territory, 50 percent or more of the voters residing in the territory.

"(c) In the case of a landowner-voter district, 50 percent or more of the voting power of the voters entitled to vote as a result of owning land within the district."

of the action of the Legislature. " '[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' [Citations.]" (*Calfarms Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814-815 [258 Cal.Rptr. 161, 771 P.2d 1247]; *Fox* v. *Federated Department Stores, Inc.* (1979) 94 Cal.App.3d 867, 880 [156 Cal.Rptr. 893].)

█ In any challenge to a statute on equal protection grounds, the threshold question is the standard of review: whether the constitutionality of the statute is to be reviewed under the "rational relationship" standard, or the "strict scrutiny standard." Generally, most legislation is reviewed under the rational relationship standard, by which the statute will be deemed valid if it is rationally related to any legitimate government purpose. (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198]; *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798-799 [187 Cal.Rptr. 398, 654 P.2d 168].) Under the more stringent strict scrutiny standard, the government bears the burden of establishing that the statute promotes a compelling state interest and is narrowly drawn to achieve that legitimate goal by the least restrictive means possible. This standard of review is applied in cases where statutes establish suspect classifications or impinge on fundamental rights and interests. (*Plyler* v. *Doe* (1982) 457 U.S. 202, 217 [72 L.Ed.2d 786, 799, 102 S.Ct. 2382]; *Board of Supervisors* v. *Local Agency Formation Com., supra,* 3 Cal.4th at p. 913; *Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d at pp. 798-799.)

█ In cases involving elections or governmental reorganization, the courts will invoke the strict scrutiny standard only when evaluating electoral schemes that have a " '. . . "real and appreciable impact" upon the equality, fairness and integrity of the electoral process.' [Citations.]" (*Board of Supervisors* v. *Local Agency Formation Com., supra,* 3 Cal.4th at pp. 913-914.) Where the statute in question has no such impact or does not involve the right to vote or any electoral process, courts use the rational relationship test to scrutinize challenged procedures. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 957-958, 961 [109 Cal.Rptr. 553, 513 P.2d 601].)

█ There are two key aspects of the procedure for majority protest set forth in section 57078 which, in our view, resolve any doubts about the validity of the statute in favor of its constitutionality. In the first place, the procedure set forth is by its very nature neither a vote nor an election: it is a protest. In order to compel the abandonment of the proposed reorganization,

individuals as designated by the statute are required to file written protests prior to the conclusion of the hearing before the conducting authority on the reorganization. There being no election, the electoral process is not involved in the statutory procedure.

The state may constitutionally create, expand, diminish, or totally abolish municipal corporations with or without the consent of its citizens, or even against their protest. (*Hunter* v. *Pittsburgh* (1907) 207 U.S. 161, 179 [52 L.Ed. 151, 159-160, 28 S.Ct. 40]; *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 951-952, 954 [104 Cal.Rptr. 297, 501 P.2d 537].) Where the state has authorized expansions of local governmental entities without the need for an election, as here, there is no deprivation of or limitation on the fundamental right to vote. Although the procedures are of course subject to the equal protection provisions of the federal and state Constitutions, they will be reviewed under the deferential rational basis standard. (*Weber* v. *City Council, supra,* 9 Cal.3d at p. 961; *Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400, 404-406 [185 Cal.Rptr. 18].)

Furthermore, section 57078 makes a key distinction between inhabited territory and territory deemed uninhabited. Majority protests are treated differently depending upon whether or not the affected territory is inhabited. If the territory to be reorganized is deemed *uninhabited,* as here, any procedure for gauging public opinion cannot take the form of a vote by residents. At the same time, it must somehow take into account the opinions of parties interested in the territory itself. The use of assessed value to weigh protests is a logical way to measure the level of a given landowner's interest in the territory.

Thus, the key elements in this situation are that the subject territory is uninhabited and that no election is involved. It is these twin elements when taken together that distinguish the instant case from those cases upon which appellant Broadmoor relies, all of which involve restrictions of some form on a right to vote in *elections* in *inhabited* districts. (*Hadley* v. *Junior College District* (1970) 397 U.S. 50, 59 [25 L.Ed.2d 45, 52-53, 90 S.Ct. 791]; *Kramer* v. *Union School District* (1969) 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886]; *Cipriano* v. *City of Houma* (1969) 395 U.S. 701 [23 L.Ed.2d 647, 89 S.Ct. 1897]; *Choudhry* v. *Free* (1976) 17 Cal.3d 660, 664 [131 Cal.Rptr. 654, 552 P.2d 438]; *Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d at p. 955.) In contrast, the reorganization of an uninhabited territory under section 57078, subdivision (a) may be accomplished without any election at all, meaning that no fundamental right to vote is implicated in any way. Because the statute does not effect any deprivation of or limitation on the

right to vote, the strict scrutiny test is inapplicable. The constitutionality of the statute must be evaluated under the rational basis standard, and it will be upheld as long as it bears some rational relationship to a legitimate state end. (*Weber* v. *City Council, supra,* 9 Cal.3d at p. 961; *Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d at pp. 404-406.)[5]

### CONSTITUTIONALITY OF PROCEDURE FOR MAJORITY PROTEST

■ Under the rational basis test, a statute will be found valid if any set of facts may reasonably be conceived to show that it is rationally related to some legitimate government purpose. (*Choudhry* v. *Free, supra,* 17 Cal.3d at p. 664; *Naismith Dental Corp.* v. *Board of Dental Examiners* (1977) 68 Cal.App.3d 253, 260-261 [137 Cal.Rptr. 133].) A court will not invalidate a statute on equal protection grounds under this standard unless it finds that the legislation is irrational, or the purposes promoted by the statute are illegitimate legislative concerns. If any state of facts can reasonably be conceived to sustain the statutory scheme adopted by the Legislature, the statute must be upheld. (*Naismith Dental Corp.* v. *Board of Dental Examiners, supra,* 68 Cal.App.3d at pp. 260-261; *Cucamonga County Water Dist.* v. *Southwest Water Co.* (1971) 22 Cal.App.3d 245, 256-259 [99 Cal.Rptr. 557].)

■ Applying this standard to the subject statute, we conclude that the procedure for majority protest by landowners in uninhabited territories, based on the assessed value of their land as set forth in section 57078, subdivision (a), is rationally related to a number of legitimate governmental purposes.

In cases involving municipal annexations, the courts have specifically recognized that the lack of any provision for direct voter participation by means of an election is rationally related to the legitimate legislative

---

[5]Even if the procedure mandated in section 57078, subdivision (a) could be construed as an electoral procedure, our review of the statute does not require strict scrutiny analysis. Strict scrutiny is applied only where the statutory procedure subjects voting rights to severe restriction, or directly interferes with the fairness and integrity of the electoral process. On the other hand, where the mandated procedures impose only reasonable, nondiscriminatory restrictions on voters' rights, the rational basis standard is applied. (*Burdick* v. *Takushi* (1992) 504 U.S. ___, ___ [119 L.Ed.2d 245, 252-254, 112 S.Ct. 2059, 2062-2064]; *Oxnard Harbor Dist.* v. *Local Agency Formation Com.* (1993) 16 Cal.App.4th 259, 267-271 [19 Cal.Rptr.2d 819].) Unlike the situation in *Oxnard Harbor Dist., supra,* the protest provisions in section 57078, subdivision (a) do not exclude any class of registered voters from having the right to vote or be candidates in any election. Even in *Oxnard Harbor Dist.,* the Court of Appeal found it unnecessary to apply the strict scrutiny test because the regulation had only an incidental effect on the exercise of political rights and did not discriminate against any particular class. The same is true in this case.

goals of promoting the orderly, efficient and economical determination of municipal boundaries, extension of municipal services and development of sparsely populated areas. (*Weber* v. *City Council, supra,* 9 Cal.3d at pp. 959-965; *Oxnard Harbor Dist.* v. *Local Agency Formation Com., supra,* 16 Cal.App.4th at p. 271; *Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d at pp. 404-406.) Section 56001 states the Legislature's policy goals in the Act as being "to encourage orderly growth and development" and "the logical formation[,] determination . . . and modification of the boundaries of local agencies." In the case of annexation of uninhabited territories, the protest procedure set forth in sections 57075 and 57078 permits public participation in the annexation decision and at the same time advances the Legislature's policy goals by being based on land ownership, the most logical criterion for public participation in an otherwise uninhabited territory.

Evaluation of landowner protests on the basis of assessed value further advances the Legislature's goal by its accuracy, simplicity, and administrative convenience. There is no necessity for a new and comprehensive reassessment of all property in the territory prior to an annexation, since the assessor's roll already contains the relevant information. Existing tax assessment rolls are an accurate, convenient and verifiable basis for apportioning the weight of landowner protests. Such administrative simplicity and convenience is a legitimate rationale for evaluating protests on the basis of assessed value. (*Southern Cal. Rapid Transit Dist.* v. *Bolen* (1992) 1 Cal.4th 654, 678-679 [3 Cal.Rptr.2d 843, 822 P.2d 875].) In contrast, appellant Broadmoor's proposed market-value-based weighting of landowner protests would necessitate costly and time-consuming reappraisals of all the land in an uninhabited territory, and would likely be subject to dispute and litigation. This approach would be contrary to the Legislature's express goal of encouraging the orderly, efficient and economical formation of municipal boundaries.

A protest procedure based on the assessed value of land in uninhabited territory is fundamentally rational and fair, because the concrete economic benefits and burdens that landowners would receive from an annexation or change in municipal organization are in proportion to the assessed value of the land. (*Salyer Land Co.* v. *Tulare Water District* (1973) 410 U.S. 719, 734 [35 L.Ed.2d 659, 669-670, 93 S.Ct. 1224].) By utilizing a system based on assessed valuation, the weight of the landowners' protests will be in direct proportion to the financial burden that the landowner must bear in the form of property taxes. This system permits landowners with relatively larger property tax liability to have a proportionately stronger voice in the determination of whether or not annexation should take place. On the other hand,

a system of assessing landowner protests on the basis of current market value would not necessarily bear any relationship to the actual financial and political responsibility borne by the individual landowners.

The California Supreme Court has specifically rejected the equal protection claim that the disparities between market value and assessed value created by Proposition 13 are unconstitutional. "We have upheld substantial inequalities in the assessed value of comparable properties for ad valorem tax purposes against equal protection challenge and validated as reasonable the acquisition-value approach to property assessment embodied in Proposition 13. [Citation.] The fact that such a constitutionally valid tax assessment system may have the marginal result of diluting voting power in an assessment referendum is an inequality that the Legislature can remedy by amending the voting scheme; it does not constitutionally invalidate the voting classification per se." (*Southern Cal. Rapid Transit Dist.* v. *Bolen, supra,* 1 Cal.4th at p. 678, fn. 8.) The United States Supreme Court has similarly upheld Proposition 13 against constitutional attack on equal protection grounds, finding that the acquisition-based system of valuation is rationally related to legitimate state interests. (*Nordlinger* v. *Hahn* (1992) 505 U.S. ___, ___ [120 L.Ed.2d 1, 12-17, 112 S.Ct. 2326, 2331-2336].)

## DISPOSITION

We conclude that, even after the passage of Proposition 13, the use of assessed valuation to evaluate landowner protests in annexation proceedings in uninhabited territories is rationally related to legitimate government purposes and passes constitutional muster under the equal protection clauses of both the state and federal Constitutions. The protest procedure set forth in section 57078, subdivision (a) is therefore constitutional.

The judgment is affirmed.

White, P. J., and Jenkins, J.,* concurred.

A petition for a rehearing was denied July 27, 1994, and appellant's petition for review by the Supreme Cout was denied September 29, 1994. Kennard, J., was of the opinion that the petition should be granted.

---

*Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.