[No. A116825. First Dist., Div. Three. Jan. 31, 2008.]

CITIZENS FOR RESPONSIBLE OPEN SPACE et al., Plaintiffs and Appellants, v.
SAN MATEO COUNTY LOCAL AGENCY FORMATION COMMISSION et al., Defendants and Appellants;
MIDPENINSULA REGIONAL OPEN SPACE DISTRICT, Real Party in Interest and Appellant.

718

**COUNSEL**

The Zumbrun Law Firm, Ronald A. Zumbrun and Todd M. Ratshin for Plaintiffs and Appellants.

Thomas F. Casey II, County Counsel, and Carol L. Woodward, Deputy County Counsel, for Defendants and Appellants.

Best Best & Krieger and Clark H. Alsop for California Association of Local Agency Formation Commissions as Amicus Curiae on behalf of Defendants and Appellants.

David W. McMurchie for California Special Districts Association as Amicus Curiae on behalf of Defendants and Appellants.

Shute, Mihaly & Weinberger, Ellison Folk, Gabriel M. B. Ross; and Susan M. Schectman for Real Party in Interest and Appellant.

OPINION

**POLLAK, Acting P. J.**—Citizens for Responsible Open Space and Californians for Property Rights (collectively, Citizens) petitioned the superior court to invalidate the annexation to the Midpeninsula Regional Open Space District (MROSD) of 144,000 acres along the coast of San Mateo County. They appeal from the judgment entered in favor of defendants San Mateo County Local Agency Formation Commission (LAFCO) and San Mateo County rejecting their petition. Citizens contend the annexation should be invalidated for numerous reasons: because public notice of the hearing to protest the annexation omitted a statement of reasons for the annexation and included an ambiguous map of the affected area, and because LAFCO delegated the task of verifying the written protests to a separate county department and assertedly determined incorrectly the number of registered voters residing in the annexation area. In a cross-appeal, LAFCO contends the trial court erred in finding that it improperly excluded protests by registered voters who did not include their residence address on the protest form. We reject Citizens' claims, but agree with LAFCO that it properly excluded those protests that did not include a residence address within the annexation area.[1]

## BACKGROUND

*Summary of the Relevant Law*

■ A local agency formation commission is an administrative body created pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Gov. Code,[2] § 56000 et seq.) (the Act) to "control the process of municipality expansion. The purposes of the act are to encourage 'planned, well-ordered, efficient urban development patterns with appropriate consideration of preserving open-space [and agricultural] lands within those patterns' [citation], and to discourage urban sprawl and encourage 'the orderly formation and development of local agencies based upon local conditions and circumstances.' " (*Sierra Club v. San Joaquin Local Agency*

---

[1] While the trial court ultimately upheld the annexation, finding that the exclusion of these protests was not prejudicial, LAFCO's cross-appeal nonetheless is proper. (See, e.g., *Escalante v. City of Hermosa Beach* (1987) 195 Cal.App.3d 1009, 1013–1014 [241 Cal.Rptr. 199].) Moreover, since the issue has been fully briefed and is likely to recur in future protest tabulations, we deem it advisable to decide the issue raised by the cross-appeal even though it does not affect the outcome of this case. (*People v. West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290] ["where, as in the cases at bench, issues on appeal affect the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, although the appeal be subject to dismissal, nevertheless adjudicate the issues involved . . ."].)

[2] All statutory references are to the Government Code unless otherwise noted.

*Formation Com.* (1999) 21 Cal.4th 489, 495 [87 Cal.Rptr.2d 702, 981 P.2d 543]; see *City of Agoura Hills v. Local Agency Formation Com.* (1988) 198 Cal.App.3d 480, 485 [243 Cal.Rptr. 740].) The purposes of the Act are achieved primarily through the approval or disapproval of annexation requests. (§ 56375; *McBail & Co. v. Solano County Local Agency Formation Com.* (1998) 62 Cal.App.4th 1223, 1228 [72 Cal.Rptr.2d 923].) Local agency formation commissions are empowered to "review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for [annexation]." (§ 56375, subd. (a); see § 56021, subd. (c); *City of Santa Clara v. Local Agency Formation Com.* (1983) 139 Cal.App.3d 923, 930 [189 Cal.Rptr. 112].)

When a petition has been approved by the commission, the Act provides a procedure by which the public can protest the proposed annexation. A notice must be published advising landowners or registered voters residing within the subject territory that they "may file a written protest against the proposal with the executive officer of the commission at any time prior to the conclusion of the hearing by the commission on the proposal." (§ 57026, subd. (g); see § 57025.) The notice must contain, among other things, the date and time for the protest hearing, a "description of the exterior boundaries of the subject territory," a description of the proposed annexation, and a "statement of the reason or reasons for the [annexation] as set forth in the proposal submitted to the commission." (§ 57026, subds. (c), (d), (e) & (f).) "Upon conclusion of the protest hearing, the [local agency formation commission] shall determine the value of written protests filed and not withdrawn." (§ 57052.) If 50 percent of the registered voters residing within the area to be annexed filed valid written protests, the annexation must be terminated. (§ 57075, subd. (a)(1).) If more than 25 percent but less than 50 percent of the registered voters residing in the subject territory filed valid protests, the annexation must be confirmed by a vote. (*Id.,* subd. (a)(2).) If less than 25 percent of the registered voters residing in the subject territory filed valid protests, the annexation may be ordered without an election. (*Id.,* subd. (a)(3).)

*Factual and Procedural History*

In 1998, San Mateo County coastside voters passed an advisory ballot measure approving MROSD's annexation of approximately 144,000 acres on the San Mateo County coast extending west from the existing MROSD boundary to the Pacific Ocean, north to the southern boundary of the City of Pacifica, and south to the Santa Cruz/San Mateo County border. Over the

next five years, MROSD held over 40 public hearings, prepared an environmental impact report and developed a coastal program service plan. In June 2003, MROSD certified the environmental impact report and formally initiated the annexation process by adopting a resolution of application.

LAFCO considered numerous reports and held three extensive public hearings on MROSD's application. Opposition to the annexation focused on "potential use of eminent domain by MROSD in the coastal area, underestimation of fiscal impacts to school districts and other agencies, lack of ability to vote on the annexation proposal, future taxation by MROSD without voter approval, lack of coastal representation on the [MROSD] Board following annexation, MROSD's lack of expertise in agricultural land management, adverse impacts of public lands on adjacent coastal agricultural lands and adverse impacts of public lands on public safety services such as fire and police protection." In response to these concerns, MROSD adopted a resolution precluding use of the power of eminent domain within the annexation area.[3] MROSD also assured LAFCO and coastside residents that it could fund its basic service plan through grants and existing revenue and that no additional taxes would be imposed on coastside residents without voter approval. MROSD adopted a resolution agreeing not to seek a property tax transfer from any of the affected agencies in connection with the annexation and entered into an agreement with the affected school district to address losses in property tax revenue due to MROSD's proposed acquisition of property within the annexation area. MROSD also agreed to work with coastside residents to develop a redistricting plan that would allow representation of the coastal area on its board and to work "with [the] San Mateo County Fire Department on a [memorandum of understanding] that includes a Mutual Aid Agreement and contract for services."

On April 7, 2004, LAFCO adopted resolution No. 960, which made findings and approved the annexation. LAFCO initiated the protest process by publishing a notice of the protest hearing in the *San Mateo Times* and in the *Half Moon Bay Review*. The notice identified the date and location of the hearing, eligibility for filing a protest, the necessary content of a protest, and the deadline for filing. A clip-out protest form was included in the published

---

[3] Later, in 2004, at MROSD's request, the Legislature adopted Public Resources Code section 5540.1, which provides that "the Midpeninsula Regional Open Space District shall not exercise the power of eminent domain to acquire any real property or any interest in real property in the San Mateo County Coastal Annexation Area, as defined in the Resolution of Application for Annexation Proceedings No. 03-20, which was adopted by the Board of Directors of the Midpeninsula Regional Open Space District on June 6, 2003."

notices. The notices included a map of the area to be annexed but did not contain a statement of reasons for the annexation. At the close of the protest period, 5,340 protests were received by LAFCO.

At the direction of LAFCO's executive officer, the task of verifying and tabulating the protest forms was performed by the San Mateo County Elections Division (elections division). The elections division issued a written protest certification in which it found that as of the close of the protest period there were 16,284 registered voters in the protest area and that 3,443 valid protests had been submitted and not withdrawn. An additional 64 protests were certified following a recount ordered in separate judicial proceedings (*Half Moon Bay Coastside v. San Mateo County* (Super. Ct. San Mateo County, 2004, No. 439808)).

Thereafter, LAFCO's executive officer adopted the findings in the elections division's protests certification. Based on the conclusion that less than 25 percent of the registered voters filed valid protests, the annexation was ordered to become effective without an election.

In November 2004, Citizens filed the present action seeking to invalidate the annexation. Following a bench trial, the court entered judgment in favor of LAFCO. The court found that some protests had been erroneously invalidated, but concluded that even when those protests were included, less than 25 percent of the registered voters had filed valid protests. The court also concluded that other claimed deficiencies in the process, described more fully below, were not prejudicial and did not require invalidation of the annexation.

Citizens filed a timely notice of appeal. Thereafter, LAFCO filed a timely notice of cross-appeal.

## DISCUSSION

### 1. *Standard of Review*

This appeal is governed by the standard of review set forth in section 56107, which provides: "(a) This division shall be liberally construed to effectuate its purposes. No change of organization or reorganization ordered under this division and no resolution adopted by the commission making determinations upon a proposal shall be invalidated because of any defect, error, irregularity, or omission in any act, determination, or procedure which

does not adversely and substantially affect the rights of any person, city, county, district, the state, or any agency or subdivision of the state. [¶] (b) All determinations made by a commission under, and pursuant to, this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion. [¶] (c) In any action or proceeding to attack, review, set aside, void, or annul a determination by a commission on grounds of noncompliance with this division, any inquiry shall extend only to whether there was fraud or a prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the court finds that the determination or decision is not supported by substantial evidence in light of the whole record." Citizens have made no claim of fraud. Thus, under subdivisions (b) and (c), the court must determine whether substantial evidence supports LAFCO's factual determinations and, if not, under subdivision (a), whether any such error was harmless in that it did not "adversely and substantially affect the rights of any person." Citizens' contentions that LAFCO made procedural errors with regard to implementing the protest process are similarly subject to the harmless error standard set forth in section 56107, subdivision (a).

Contrary to Citizens' argument, the protest process under the Act does not implicate a fundamental right to vote. (*Broadmoor Police Protection Dist. v. San Mateo Local Agency Formation Com.* (1994) 26 Cal.App.4th 304, 310–311 [31 Cal.Rptr.2d 536]; *Oxnard Harbor Dist. v. Local Agency Formation Com.* (1993) 16 Cal.App.4th 259, 268–269 [19 Cal.Rptr.2d 819].) Thus, LAFCO's approval of the annexation application is not subject to a heightened standard of review. (*Ibid.*)

2. *LAFCO's omission of a statement of reasons for the annexation in the public notice of the protest hearing was not prejudicial.*

Citizens contend that the annexation must be invalidated because the notice of the protest hearing did not include a statement of the reasons for the annexation as required by section 57026, subdivision (e). The trial court acknowledged this deficiency but concluded that "the notice was in substantial compliance with the statutory mandate." The court also found no evidence that the omission adversely and substantially affected the rights of any person. The court explained that "the administrative record is replete with references to wide-spread notice of the annexation proceedings and the reasons for the annexation. The matter was the subject of public debate for over six years. More than 40 public meetings, including 17 Citizens' Advisory Committee meetings and 21 MROSD board meetings were devoted to the annexation issues. . . . MROSD also conducted an advisory vote on the annexation program. The campaign to collect valid protests was extraordinary. Supporters and opponents of the annexation met the public in front of local businesses, lawn signs were displayed and newspaper coverage of the issue was extensive."

Citizens argue that the failure to include a statement of reasons was not a "technical deficiency" so that the doctrine of substantial compliance should not apply, and that when a notice "omits necessary information and thereby deprives interested persons of an opportunity for public participation and informed decision-making, 'the prejudice is manifest.' "

Whether or not the substantial compliance doctrine applies in this context, the omission of the statement of reasons from the public notice clearly was not prejudicial in this case. There is nothing in the record to suggest that the omission "adversely and substantially affect[ed] the rights of any person . . . ." (§ 56107, subd. (a).) To the contrary, as the trial court concluded, the overwhelming weight of evidence establishes that the public was aware of the arguments in favor and against the annexation and given a meaningful opportunity to participate in the protest process. In addition to the evidence cited by the trial court, the notice of the March 9, 2004 public hearing at which LAFCO approved resolution No. 960 included a statement of the reasons for the annexation. The disputed notice of the protest hearing advised the public that resolution No. 960, which also includes a statement of the reasons for the annexation, could be obtained at the LAFCO offices. Accordingly, the omission provides no basis to invalidate the annexation.[4]

3. *Any potential ambiguity in the maps of the annexed territory was not prejudicial.*

According to Citizens, "The administrative record includes at least three different versions of maps relied upon by MROSD and LAFCO purporting to identify the boundaries of the proposed annexation area . . . ." While Citizens argue that members of the public raised "various and specific objections" to LAFCO's maps, only two ambiguities are addressed by Citizens with even minimal specificity.

The first is related to an approximately 160-acre parcel that is "alternatively included in differing locations or not included at all" on LAFCO's maps. The 160-acre parcel is geographically within MROSD's preexisting boundaries, but was previously excluded from the district. It is near the former western boundary of the district and nearly adjacent to the much

---

[4] We grant Citizens' request to take judicial notice of a transcript of proceedings before the San Mateo County Superior Court in *Half Moon Bay Coastside v. San Mateo County, supra*, No. 439808, in which the court denied a request for a temporary restraining order to stop the protest hearing. While the trial court in those proceedings was troubled by LAFCO's failure to include the statement of reasons in the public notice of the protest hearing, the court denied the request for a restraining order, having concluded that the public had participated in a "robust protest and process." The court's observation in that matter thus supports the conclusion that the public was not prejudiced by the omission.

larger 144,000-acre annexation area depicted on all of the relevant maps. The 160 acres is accurately depicted on the map appended to this opinion, which is the map included in MROSD's application for annexation.

The second asserted ambiguity relates to the location of MROSD's preexisting western boundary near Skyline Ridge. The annexation area is directly adjacent to MROSD's preexisting western boundary. This boundary is correctly depicted on all maps that were utilized in the annexation process, but in public statements by LAFCO members and in LAFCO memoranda was sometimes referred to as running along Skyline Boulevard. Literally, however, this major thoroughfare is within the preexisting boundaries of the MROSD. Citizens suggest that LAFCO failed to respond to claims by the public noting "great difficulty in assessing the proposed boundaries along Skyline Ridge." They argue that "to this very day [LAFCO] continue[s] to describe the annexation boundaries along the jagged Skyline Ridge area incorrectly" and inconsistently. "The map found on MROSD's own website depicting the 'Proposed Coastside Protection Program' plainly contradicts [LAFCO's] assertion that the boundaries of the annexation area are defined by Skyline Boulevard (SR-35). As shown on the map produced by MROSD staff, SR-35 is substantially well-within MROSD's pre-annexation holdings."[5] Without further elaboration, Citizens assert that "LAFCO's failure to respond to repeated complaints about inaccurate and insufficient maps prejudiced the ability of appellants and other interested citizens to adequately raise sufficient protests to the proposed annexation."[6]

We have carefully reviewed the map that was published with the notice of the protest hearing. We conclude that the map was a sufficient "description of the exterior boundaries of the subject territory" for purposes of section 57026. As LAFCO explains, the map "was not intended to be a precisely surveyed guide to the exact limit of the annexation area, but a description of its external boundaries in a manner that would effectively inform the reader." There is no doubt that the map included with the notice complied with the statutory requirement.

While Citizens are correct that the 160-acre parcel was not correctly placed on the map that accompanied LAFCO resolution No. 960, the error was

[5] We grant Citizens' request to judicially notice the map of the annexation area found on MROSD's Web site and that Skyline Boulevard is also referred to as State Route 35 on some of the relevant maps in the record.

[6] Almost all of Citizens' briefing on this issue is devoted to the argument that it properly exhausted its administrative remedies "as to the map and boundary issues" and that "[t]hose issues are properly subject to judicial review." Citizens' inability to set forth these "issues" with any greater specificity lends support to the trial court's finding that they failed to exhaust their administrative remedies. Nonetheless, we need not resolve the issue on this ground because we conclude that any potential ambiguity in LAFCO's maps was not prejudicial.

insignificant. The map depicted an annexation area of some 144,000 acres and the 160 acres were within the district's preexisting boundaries. The error could have been of no importance to property owners not within the 160 acres. There is no evidence that any resident of the 160 acres failed to receive proper notice of the annexation or did not understand that the 160 acres were included in the proposed annexation. There is no evidence that with proper notice any additional residents of the area would have filed protests. Nor is there evidence that enough registered voters resided within the 160-acre area to have pushed the protest count over the 25 percent threshold even if they all had filed protests.

Likewise, Citizens have failed to establish any prejudice resulting from confusion regarding the eastern boundary of the annexation area. LAFCO's maps all properly depict this boundary. The fact that LAFCO documents sometimes refer to the boundary as Skyline Boulevard, a well-known, identifiable thoroughfare not far from the actual boundary, rather than laboriously describing verbally the precise but jagged contours of the actual boundary, was not likely to have resulted in prejudice. Certainly Citizens have not demonstrated that LAFCO's description of the boundary "adversely and substantially" affected anyone's rights. (§ 56107, subd. (a).)

4. *The annexation was properly finalized without an election.*

At the close of the protest period, 5,340 written protests were submitted. In the verification process, LAFCO found that 3,443 of these protests were valid. In earlier proceedings, the San Mateo Superior Court ordered a recount, which resulted in the inclusion of an additional 64 protests as valid. In the present proceedings, the trial court conducted an extensive review of the remaining disallowed protests and concluded that an additional 288 should be included, resulting in a grand total of 3,795 valid protests. Based on LAFCO's finding that there were 16,284 registered voters in the affected area as of the June 11, 2004 protest hearing, the trial court concluded that less than 25 percent of the registered voters (3,795/16,284 = 23.3%) had submitted valid protests.

While Citizens do not challenge the finding that 3,795 valid protests were submitted, they argue that LAFCO improperly delegated to the elections division the task of counting and verifying the protests. Citizens also argue that LAFCO used an incorrect date on which to determine the proper number of registered voters in the affected area, and that the total number of registered voters as of the correct date was only 16,077. In its cross-appeal, LAFCO challenges the trial court's determination that some protests excluded by LAFCO should have been included in the protest count.

Initially, we note that even if Citizens are correct that there were only 16,077 registered voters residing in the annexation area on the relevant date, and assuming the trial court properly included the protests challenged in the cross-appeal, the annexation would not be invalidated. At most, only 3,795 out of 16,077 registered voters, or 23.6 percent, filed valid written protests to the annexation. We shall nonetheless address each of the parties' contentions in turn.

### A. *LAFCO did not improperly delegate its statutory responsibilities to the elections division.*

Section 57052 directs that "[u]pon conclusion of the protest hearing, the commission shall determine the value of written protests filed and not withdrawn. The value of written protests shall be determined in the same manner prescribed in Sections 56707, 56708, and 56710 for determining the sufficiency of petitions filed with the commission." Section 56707 provides, "If a petition is signed by registered voters, the executive officer shall cause the names of the signers on the petition to be compared with the voters' register in the office of the county clerk or registrar of voters and ascertain both of the following: [¶] (a) The number of registered voters in the affected territory. [¶] (b) The number of qualified signers appearing upon the petition."[7] The task of verifying the signatures on the protest forms is purely ministerial. (See *Friends of Bay Meadows v. City of San Mateo* (2007) 157 Cal.App.4th 1175, 1187 [68 Cal.Rptr.3d 916] [the "role of an election official [in verifying a petition] has been repeatedly described as purely ministerial, involving no exercise of discretion . . ."]; see also *Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 132–133 [133 Cal.Rptr.2d 249].)

In this case, LAFCO satisfied its obligations under the statute. Its executive officer *caused* the names of the signers on the protests to be verified by delegating that ministerial task to the elections division. Then, based on the information received from that division, the executive officer "determine[d] the value of written protests filed and not withdrawn." She expressly approved the criteria used by the elections division to verify the protests and adopted the division's findings.[8]

---

[7] Sections 56708 and 56710, which govern verification of signatures by landowners, are not relevant to this appeal.

[8] For this reason, *Voices of the Wetlands v. California State Water Resources Control Bd.* (2007) 157 Cal.App.4th 1268 [69 Cal.Rptr.3d 487], cited by Citizens in advance of oral argument, is distinguishable. In that case, the court reiterated the general rule that "[an] administrative body charged with responsibility for a particular determination must itself examine and ultimately decide the question." (*Id.* at p. 1324.) The court found that the California State Water Resources Control Board failed to discharge its duty to make a required

■ Nothing in the Act required the executive officer personally to ascertain the number of qualified signers who filed protests. Nor does the Act require the executive officer personally to supervise the elections division's verification process. LAFCO's executive officer appropriately delegated to the governmental division competent to perform the task the responsibility of applying to each of the challenged protests the criteria that the executive officer approved. There was no improper delegation of LAFCO's duty to determine the value of the written protests.

B. *LAFCO properly determined the number of registered voters residing within the annexation area as of the date of the protest hearing.*

■ The Act does not indicate the date on which the number of registered voters should be counted for the purpose of determining whether an election is required under section 57075. Relying on section 56046, Citizens argue that the proper date is January 9, 2004, the date on which LAFCO issued the certificate of filing for the annexation application. Section 56046 requires that the number of registered voters be determined as of the date that the certificate of filing is issued, but only for the purpose of determining whether an area is inhabited or uninhabited, which affects the procedure LAFCO must follow in acting on the application.[9] Section 56046 is not expressly or implicitly applicable to the protest process. As no other provision expressly governs this issue, the matter remains vested in LAFCO's discretion.

Citizens suggest that determining the number of registered voters residing within the affected area at the outset of the proceedings is appropriate because it "would ensure that all registered voters eligible to participate in the protest receive proper notice [of the protest proceedings]." Determining the number of registered voters at the time the certificate of filing is issued, however, has no effect on the public notice of the protest hearing. Notice of the protest hearing is required to be given by publication, not by individual mailing to the registered voters in the affected area. (§ 57025, subd. (a).)

More importantly, LAFCO provides a reasonable explanation for counting the number of residents as of the close of the protest period, rather than the

determination when it " 'apparently accepted' [facts contained in its staff report] 'without any independent study or analysis.' " (*Id.* at p. 1323.) Unlike the present case, there, while "two individual board members criticized the [staff report] . . . there is no evidence that the Regional Board as a whole analyzed or even discussed the issue." (*Ibid.*)

[9] Section 56046, which defines "inhabited territory," provides in relevant part, " 'Inhabited territory' means territory within which there reside 12 or more registered voters. The date on which the number of registered voters is determined is . . . the date a petition or other resolution of application is accepted for filing and a certificate of filing is issued by the executive officer. All other territory shall be deemed 'uninhabited.' "

commencement of annexation proceedings. As LAFCO explains, "The 25% and 50% thresholds for triggering an election or blocking the annexation, respectively, represent fractions—the number of valid protests over the total number of registered voters. It requires only simple logic to conclude that the denominator and numerator of the fraction should be measured at the same time." Residents who register to vote after the application is certified are eligible to submit protests and, thus, they should also be included in the final count of registered voters for purposes of section 57052. Likewise, voters who move from the affected area prior to the end of the protest period should be excluded from the final count. LAFCO's decision is also consistent with section 56707 which, as quoted in full above, required LAFCO's executive officer to ascertain, at the time the protests were being verified, both the number of registered voters in the affected territory and the number of qualified signers who submitted protests. Thus, LAFCO did not abuse its discretion in counting the number of registered voters in the affected territory for purposes of section 57075 as of the date of the protest hearing.

Contrary to Citizens' assertion, the written protest certification prepared by the elections division is substantial evidence in support of LAFCO's determination that there were 16,284 voters in the annexed area as of June 11, 2004. Under Evidence Code section 664, this official document is entitled to a presumption of correctness. The presumption is not overcome because the certification was executed subsequent to the date to which it applies, on July 8, 2004, or because the elections division did not produce the records from which the determination was made.[10] Accordingly, because less than 25 percent of registered voters protested the annexation, LAFCO properly ordered the annexation without election.

### C. *LAFCO properly excluded protests that did not include the protester's residence address.*

After reviewing each of the challenged protests, the trial court determined that LAFCO improperly excluded protests filed by registered voters that did

---

[10] We grant Citizens' request to take judicial notice of a letter written by the San Mateo County Elections Manager, dated February 12, 2007. The letter states that no records were found in response to Citizens' California Public Records Act (Gov. Code, § 6251) request for "[a]ll maps, correspondence, reports, record, lists, databases, and any other documents . . . determining or relied upon in determining the total number of registered voters residing in the area to be annexed by [MROSD]" on June 11, 2004, "because reports, databases and the like were not created [on that date]. Our voter registration system utilizes a 'dynamic' database where information is create[d] and changed in a 'real time' environment and can not be recreated exactly for specific times/dates."

not include the voter's residence address.[11] The court regarded the situation as unusual because "a large number of the registered voters in the affected area have mailing addresses that are different from their residence addresses." Although it considered the requirement that the residence address be included to be "practical, reasonable and efficient," the court concluded that the requirement was not consistent with the language of the Act. We disagree.

█ Under section 57051, "Each written protest shall state whether it is made by a landowner or registered voter and the name and address of the owner of the land affected and the street address or other description sufficient to identify the location of the land or the name and *address* of the registered voter as it appears on the affidavit of registration." (Italics added.) The affidavit of registration form authorized by the California Secretary of State requires the registrant to identify his or her "address" and explains that this address must be the voter's California residence and domicile, and not a post office box.[12] On a separate line, the registrant is permitted to indicate a "mailing address," which may be a post office box, *if it is different from the* address "where you live." Thus, the requirement under section 57051 that a protest include the registered voter's address must be understood to refer to the individual's residence address rather than his or her mailing address.

To the extent that there is any ambiguity, other sections of the Act reinforce the interpretation that section 57051 requires the inclusion of the voter's residence address. Under section 57075, subdivision (a)(2)(A), an election is required only "if written protests have been filed and not withdrawn by . . . [¶] . . . [a]t least 25 percent, but less than 50 percent, of the registered voters *residing in the affected territory*." (Italics added.) Thus, what ultimately determines the right of a registered voter to protest the acquisition is the individual's residence within the affected area. Receipt of mail at a particular post office box does not necessarily establish one's residence. Theoretically it might be possible to ascertain the residence address of protesters who list only a post office box for their address. Nonetheless, verification that the registered voter resides within the affected territory would be significantly more difficult, if possible at all, when the voter fails to include a residence address. Likewise, section 56704, subdivision (b) requires voters who sign petitions for annexation to "indicate on the petition his or her place of

---

[11] The parties have not identified how many protests were invalidated on this basis. It appears that many but not all of the 288 protests validated by the trial court fell within this category.

[12] We grant Citizens' request to judicially notice California's online voter registration form. Under Elections Code section 2102, "A person may not be registered as a voter except by affidavit of registration." "No affidavits of registration other than those provided by the Secretary of State to the county elections officials or the national voter registration forms authorized pursuant to the National Voter Registration Act (42 U.S.C. Sec. 1973gg) shall be used for the registration of voters." (Elec. Code, § 2162, subd. (a).)

residence, giving street and number or other designation sufficient to enable the place of residence to be readily ascertained."[13] Elections Code section 100 compels the same conclusion. It provides, "Notwithstanding any other provision of law, whenever any initiative, referendum, recall, nominating petition or paper, or any other petition or paper, is required to be signed by voters of any county, city, school district, or special district subject to petitioning, only a person who is an eligible registered voter at the time of signing the petition or paper is entitled to sign it. Each signer shall at the time of signing the petition or paper personally affix his or her signature, printed name, and place of residence, giving street and number, and if no street or number exists, then a designation of the place of residence which will enable the location to be readily ascertained."

The protest form LAFCO prepared and included in the public notice asked for the "name and address of registered voter, as shown on the affidavit of registration" and on a separate line also asked for the "address or parcel number of the property." Thus, if an individual mistakenly included a post office box as his or her address, by completing the second line the protester provided the information necessary to validate the protest. Few, if any, of the protests that were invalidated on this ground were submitted on the form LAFCO circulated. Instead, most of the invalidated protests were submitted on a form prepared by Citizens that asked only for the "voter address" and directed the signer to "fill in your address **exactly** as it appears on your voter registration." This form omitted the additional line requesting the address or parcel number of the property. While this form was sufficient if correctly completed, by eliminating the additional line included on the form prepared by LAFCO, Citizens' form created the risk that an individual who mistakenly gave a post office box as his or her address would not provide the information necessary to validate the protest. Fortunately, in this instance the error was not significant because, as noted above, the inclusion of the invalidated protests did not increase the number of protests to 25 percent of the registered voters and would not have affected the outcome of the protest. Thus, while the trial court erroneously determined that the protests invalidated on this basis should have been counted, the court properly upheld the annexation.

---

[13] Section 56704, subdivision (b) provides in relevant part, "If a petition is signed by registered voters, each person signing the petition shall, in addition to his or her signature, affix the date upon which he or she signs the petition and indicate on the petition his or her place of residence, giving street and number or other designation sufficient to enable the place of residence to be readily ascertained."

Section 57052 provides that "The value of written protests shall be determined in the same manner prescribed in Sections 56707, 56708, and 56710 for determining the sufficiency of petitions filed with the commission." Citizens are correct that section 56704 is not expressly enumerated in section 57052. Nonetheless, section 56704 is in the same chapter as the three enumerated sections and clearly is related to the manner in which the value of signatures on a petition is to be determined.

## DISPOSITION

The judgment is affirmed. San Mateo County Local Agency Formation Commission, San Mateo County, and Midpeninsula Regional Open Space District shall recover their costs on appeal.

Siggins, J., and Horner, J.,* concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied April 23, 2008, S161705. George, C. J., did not participate therein.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# APPENDIX

San Mateo County Coastal Annexation Area

Proposed Annexation Area Boundary ⬚ MROSD Open Space Preserves
Existing MROSD Boundary ⬚ Other Protected Lands

LAFCO 4647